### No. 6639.

### M. M. MOSELEY *v.* THE STATE.

1. PRACTICE—CONTINUANCE.—The application failing to show the exercise of due diligence to secure the absent testimony, and that the said absent testimony was material to the defense, the continuance asked for was properly refused.

2. ACCEPTING A BRIBE TO RELEASE A PRISONER.—A peace officer who is prosecuted for accepting a bribe to release a prisoner can not impeach the legality of the arrest as a defense.

3. SAME.—See the statement of the case for evidence *held* sufficient to support a conviction for accepting a bribe to release a prisoner.

APPEAL from the District Court of Johnson. Tried below before the Hon. J. M. Hall.

This conviction was for accepting a bribe to release one John Gable, whom the appellant had arrested under a charge of theft. The penalty assessed by the jury was a term of three years in the penitentiary.

L. F. Gable was the first witness for the State. He testified that he lived near Alvarado, Johnson county, Texas, in November, 1886. He was the father of John Gable, who lived with him. Witness's proper name was L. F. Gable, but he was equally well known as L. F. Gabriel. About noon, on the twelfth day of November, 1886, the witness was notified that his son John had been arrested in the town of Alvarado, and was then in custody. He repaired at once to said town, and found his son under arrest and in the custody of the defendant, who was then the constable of the precinct. Tom Johnson was guarding his son under the orders of the defendant. Defendant told the wit-

ness that he had arrested his son John, upon the complaint of Jasper Thomas, for the theft of a pair of shoes from the said Jasper. Witness then requested defendant to release his son on bail, which he proposed to furnish. Defendant replied that no affidavit had yet been filed against John Gable, and that no warrant had been issued for his arrest, and that, as Justice of the Peace Martin was in Cleburne and would not be back on that day, he (defendant) would be compelled to hold John Gable, confining him in jail that night. A short while later, defendant said that he could get advice from the sheriff over the telephone. Witness and defendant then went to the telephone, and witness called Sheriff Boyd. Defendant then told witness to go down, and he would talk to Boyd. Witness left the telephone office and was soon joined by the defendant, who proposed that if the witness would pay him twenty-five dollars he would release witness's son. Witness did not then have the money, but went to George Prestridge, who loaned him twenty dollars. Witness then went to Dep Head's saloon, where he found defendant, Tom Johnson, John Gable, Jasper Thomas and H. Gable, brother of the witness. Witness then told defendant how much money he had been able to get, and defendant told him to pay Thomas five dollars of it for the shoes, which witness did. Witness and defendant then went to the southeast corner of the saloon, where there was a small room. Defendant went into that room. Witness stepped to the door and handed defendant a ten and a five dollar bill. Witness and defendant then returned to the front of the saloon, when defendant told John Gable that he could go. Before witness and his son left to go home, defendant told witness's son to return in the morning in order that the matter might be "fixed up" with Justice of the Peace Martin. He then told witness that he too had better come back next morning, when the matter would be "fixed" with the justice of the peace. Witness accordingly went to Alvarado early on the next morning, and called on defendant three times to go to Martin and get the matter settled. Twice defendant said that he was too busy to go, and the third time he told witness to go home and that he would arrange the matter with Martin. Witness did not know how the matter was to be "arranged," but on the previous evening the defendant said something about a "complaint" being "filed." It was about night when witness paid the defendant the fifteen dollars for the release of his son. Witness, his son, and his brother went

home together. Witness took two or three drinks after the release of his son, but was not drunk. The witness did not go to the justice of the peace at all. Cross examined, the witness said that his name was L. F. Gable, spelled G-a-b-l-e, but he was called "Gabriel" by a large number of people, and was quite as well known by the name of Gabriel as by the name of Gable. The defendant's motion to exclude the testimony of this witness because of variance between the name of the injured party as alleged in the indictment and as proved was overruled.

George Prestridge testified, for the State, that, about sun down on the evening that defendant arrested John Gable for stealing a pair of shoes from Jasper Thomas, L. F. Gable, the father of John Gable, came to witness, and told him that Mr. Robinson had promised to let him have some money, but had gone to supper, and that he had immediate use for some money. Witness asked him how much money he wanted, and he replied that he needed twenty dollars. Witness then let him have twenty dollars, and, fearing that he would spend it for whisky, watched him. He saw L. F. Gable go into Dep Head's saloon and enter into conversation with a party composed of defendant, Tom Johnson, John and H. Gable. Witness left the parties at the said saloon and did not see L. F. Gable any more that night. Witness had known Gable for eighteen months, and had often heard him called "Gabriel."

Justice of the Peace Martin testified, for the State, that he was absent from Alvarado on the twelfth day of November, 1886. When he returned on the next morning he heard that defendant, who was then constable of the precinct, arrested John Gable on the day before for theft of a pair of shoes, and that he afterwards released him. No complaint charging John Gable with the theft of the shoes was filed with witness, nor did he ever issue a warrant for the arrest of said Gable. Defendant never reported the arrest of Gable to witness. Witness had known L. F. Gable for eighteen months. He had heard people pronounce his name "Gabriel."

H. Gable testified, for the State, that he was living near L. F. Gable at the time that the latter's son was arrested for the theft of Jasper's shoes. He went with L. F. Gable to Alvarado, and found John under arrest and in the custody of Johnson as guard, and paid Johnson two dollars for acting as guard and keeping John Gable out of jail. L. F. Gable asked defendant to release his son on bail, which he proposed to furnish. Defendant told

L. F. Gable to telephone Sheriff Boyd about the arrest of John, and went with L. F. Gable to the telephone for the purpose of doing so. Witness did not go with them. The witness had no personal knowledge of what transpired between defendant and L. F. Gable at the telephone. When they left the telephone, L. F. Gable and defendant went to Dep Head's saloon. Soon afterwards they went to the back part of the saloon. Defendant went into the small back room, and L. F. Gable went to the door of that room. They soon came back to where witness, Tom Johnson and John Gable were, and defendant told Johnson to release John Gable. Witness went home with his brother and John Gable on that night. L. F. Gable took a few drinks after the release of his son on that night, but did not get drunk. Witness's name was Gable, but he was known quite as well by the name of "Gabriel."

John Gable testified, for the State, that he was the son of L. F. Gable, and the party who was arrested by the defendant on the charge of stealing the shoes of one Jasper Thomas. The said Thomas, who was a negro, pointed witness out to defendant, and charged that the witness had stolen the shoes he was then wearing from him, the said Thomas. After witness's arrest defendant took him to Thomas, who examined the shoes again, and claimed them as a pair of shoes he had made and lost. Witness did not want to go to jail, and offered to pay such person as defendant would select to guard him. Defendant put witness in charge of Tom Johnson, who kept him under guard about nine hours. Witness was released late that evening, and paid Johnson two dollars for guarding him, which money was furnished by the witness's uncle. Defendant released witness in Dep Head's saloon. Witness heard the defendant tell his father, L. F. Gable, to pay Jasper five dollars for the shoes, which the witness's father did. Witness at the same time saw other paper money in his father's hand. Defendant and witness's father then went to the rear of the saloon together; defendant entered the little back room and witness's father went to the door of that room and handed something—witness did not see what—to the defendant. Defendant then released witness, but told him to come back to town on the next morning to "fix the matter up." He afterward told witness's father to come to town on the next day to "arrange" the matter. Witness had never been re-arrested nor prosecuted for the theft of the shoes. The shoes for the theft of which witness was arrested were

bought by witness's brother at Mount Peak about a month before witness's arrest.

C. V. Myers testified that he had known L. F. Gable for two or three years, and did not know that his name was "Gable" until the fall of 1886. He was generally known and called by the name of Gabriel—"the name of him who is to blow the last trumpet."

The State read in evidence the documents showing the election, qualification, etc., of the defendant as constable of precinct No. 4, Johnson county, Texas, and, as the defense offered no testimony, the case was closed.

The motion for new trial raised the questions discussed in the opinion.

*W. H. Skelton* and *M. A. Otis,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. I. It was not error to refuse defendant's application for a continuance. Sufficient diligence to secure the attendance at the trial of the absent witnesses was not shown. Furthermore, the allegations as to the facts expected to be proved by said witnesses, in so far as said alleged facts are material, are vague and indefinite, and are merely negations of the State's testimony, which, if they had been in proof, could not properly have influenced the jury in its finding.

II. This conviction is under article 136 of the Penal Code, which reads: "If any sheriff, or other executive or peace officer, shall accept or agree to accept a bribe offered as mentioned in articles 133, 134 and 135, he shall receive the same punishment as is affixed to the offense of giving or offering a bribe in the particular case specified." And article 133, applicable to this case, reads: "If any person shall bribe, or offer to bribe, any sheriff or other peace officer, to permit any prisoner in his custody to escape, he shall be punished by imprisonment in the penitentiary for a term not less than two nor more than five years."

The facts of the case are, as shown by the evidence, that the defendant was constable of precinct number four of Johnson county. As such officer he arrested and had in his custody as a prisoner one John Gable. He arrested and held said prisoner without a warrant, upon the verbal and unsworn statement of

one Thomas, charging said prisoner with the theft of a pair of shoes. L. F. Gable, the father of the prisoner, learning of the arrest and custody of his son, went to the defendant and proposed to release the prisoner from custody by giving bail for him. The defendant replied to this proposition that he would have to place the prisoner in jail, as the justice of the peace was absent, etc. He then proposed to the father, L. F. Gable, that if he would pay him (the defendant) twenty-five dollars, the prisoner should be released. This proposition was accepted by the father, and he paid the defendant said sum, whereupon the defendant released the prisoner from custody. The foregoing are the facts as testified to by L. F. Gable, and his testimony is strongly corroborated by other witnesses who testified on the trial, and there was no evidence adduced on the trial even tending to question the truth of the facts above recited.

It is insisted by counsel for defendant that the arrest and custody of John Gable by the defendant was without authority of law, and that, therefore, it was no offense for the defendant to accept a bribe to release him. We do not so understand the law. It was by virtue of his official authority that the defendant arrested and held John Gable. It matters not whether the arrest and custody were legal or illegal, the said Gable was a prisoner in the custody of the defendant, a peace officer, and was permitted by the defendant to escape, in consideration of money paid him to effect such escape. We are of the opinion that, in a prosecution for this offense, it is not permissible for the defendant to question the legality of his custody of the prisoner. Such an issue is irrelevant and immaterial. The moral obliquity of this offense is the same where the custody of the prisoner is illegal as where it is legal, and the injury to public justice is the same. (Florez v. The State, 11 Texas Ct. App., 102.) The law abhors even a tendency to official corruption, and it is official corruption that this statute is intended to punish, and not the illegal arrest and detention of a citizen. There are other provisions of the code which protect the citizen in his liberty. We hold that the facts of this case bring it within articles 133 and 136 of the Penal Code, and that there is no error in this conviction.

We have considered other questions presented in the record, but deem them unimportant and without merit.

The judgment is affirmed.                              *Affirmed.*