presented in the motion for new trial are as follows:

"1. That the verdict of the jury is unintelligible, uncertain, and without meaning on its face. The verdict reads as follows: 'We the jury find the defendant *guidy* and *asscss* his punishment at three years and three months in the penitentiary.' These misspelled words in the verdict would not be ground for new trial. In the case of Harris v. State, 34 S. W. 922, a verdict, which read, 'We the jury find the defendant *guitty* and assess his *punishmz* at 90 days imp. county *jale*,' was held good. In McGee v. State, 39 Tex. Cr. R. 190, 45 S. W. 709, the use of the word 'guity' in the verdict was held sufficient. See, also, Attaway v. State, 31 Tex. Cr. R. 475, 20 S. W. 925, and Harwell v. State, 22 Tex. App. 251, 2 S. W. 606. There could be no misunderstanding as to the verdict of the jury.

"2. That the verdict of the jury is erroneous because it was arrived at by lot. The testimony adduced on the hearing of the motion does not support the contention of appellant in this regard. The court heard the testimony, and finds against the contention of appellant, and we think correctly so."

The judgment is affirmed.

---

## Ex parte SHEPHERD.

(Court of Criminal Appeals of Texas. Jan. 22, 1913. Rehearing Denied Feb. 19, 1913.)

1. HABEAS CORPUS (§ 30*) — GROUNDS — RELIEF FROM PUNISHMENT FOR CONTEMPT — FINDINGS OF FACT.

The Court of Criminal Appeals will not, on habeas corpus, to secure relief from a punishment assessed for contempt by the district court, review the district court's findings of fact, where such ·court had jurisdiction, and the act of which the relator was adjudged guilty was contemptuous.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

2. CONTEMPT (§ 28*)—ATTEMPT TO INFLUENCE JUROR—DEFENSES.

In a prosecution for contempt of court in approaching with improper proposals a juror then actually serving as such, it was not a defense that the juror was legally disqualified, especially where the accused did not then know of such disqualification.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 81–85, 271; Dec. Dig. § 28.*]

Application for writ of habeas corpus by A. S. Shepherd. Relator remanded.

Heidingsfelders, of Houston, and A. S. Phelps and O. Dickens, both of Austin, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. At the August term of the Harris county criminal court applicant was tried, charged with being in contempt of that court, and upon a hearing of the matter Hon. C. W. Robinson entered up an or-

der holding that "the court is of the opinion that the defendant should be held in contempt of this court for unduly attempting to influence a juror in the manner and by the means alleged, who had been duly summoned, sworn, and impaneled as a juror for the week, in a manner that would hinder the due administration of justice, and the administration of the laws of this state, and punished by a fine of $100 and three days' imprisonment in the county jail," etc. The complaint upon which relator was fined was filed by Hon. Richard G. Maury, the district attorney, and alleged: "On or about the 26th day of the month of September, A. D. 1912, in the county of Harris and state of Texas, A. S. Shepherd did unlawfully, willfully, and corruptly, and in contempt of this court, and with the purpose to influence in his action as a juror one J. F. Hill, did approach and attempt to influence the said J. F. Hill in his deliberations and determination as a juror in this, to wit: That upon said date said J. F. Hill was a regularly sworn juror in the criminal district court of Harris county, Tex., for the week, and was serving as same on the date aforesaid, and that upon said date the said A. S. Shepherd approached the said J. F. Hill and inquired of him if he was on the jury in the said court, and, upon being informed by the said J. F. Hill that he was on said jury, he the said A. S. Shepherd then and there stated to him that he had a very good friend, to wit, N. A. Hughes, ·who was going to be tried this week, and that if he, the said Hill, could do anything for the said N. A. Hughes, he, the said · A. S. Shepherd, would appreciate it." Relator was cited to appear, and on a hearing it was shown that Mr. Hill was regularly summoned to serve on the jury for the week, and was impaneled as a juror and served as a juror for that week of the court; that on Thursday morning, after having been impaneled on the jury for the week, on Monday preceding, on his way to the courtroom, he met relator upstairs in the courthouse, and had a conversation with him. The witness testified: "I spoke to Shepherd (relator) and he said, 'What are you doing up here?' I said, 'I am on the regular jury for the week;' and he said, 'I have got a particular friend with a case coming up this week, and, if you can do anything for him, it will be appreciated. Try him like you would yourself.' He said his friend was Dr. Hughes."

[1] Relator testified, denying this entire conversation, and reciting an entirely innocent conversation he claims he had with the juror. The court, however, by his judgment finds the facts to be as testified to by the juryman, and this issue of fact we have no right to inquire into in a habeas corpus proceeding, if the facts as testified to, under any legitimate conclusion of fact found by the court, would authorize the court to ad-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

judge relator guilty. This court in the case of Ex parte Degener, 30 Tex. App. 566, 17 S. W. 1111, quotes extensively from the authorities, and discusses the question at length, and this rule in habeas corpus cases is approved: "There are three essential elements necessary to render a conviction valid. These are that the court may have jurisdiction over the subject-matter, the person of the defendant, and the authority to render the particular judgment. If either of these elements are lacking, the judgment is fatally defective." Thus we can examine the facts only in so far as to enable us to determine if the court had authority in law to render the judgment he did render. If he did, we have no right to substitute our finding on the facts in place of his finding, where the evidence is contradictory. If, under all the evidence, no legitimate deduction could be drawn therefrom, which in law would authorize the judgment rendered, then we will discharge. As before stated, the evidence offered by the state would support a finding that the language used was contemptuous, and we would not be authorized to review that finding of fact.

[2] However, relator insists that the evidence conclusively shows that J. F. Hill was not a legal juror, and for this reason, even if Mr. Hill was approached in the manner testified to by him and as found by the court, as he was not a legal juror, the court as a matter of law "had no authority to render the judgment," and cites us to subdivision 4 of article 673 and article 676 of the Code of Criminal Procedure, wherein it is declared to be the law of this state that a person under indictment or other legal accusation for theft or any felony is not a qualified juror, and that no such person shall be impaneled as a juror, although the parties may consent.

The evidence would show that the grand jury of Harris county, some time prior to the August term of the court, had indicted Mr. Hill, charging him with assault to murder. While examining Mr. Hill as a witness relator's counsel asked him the question: "It is a fact that you are under indictment pending in this court charged with assault to murder one Neil McCay?" to which the witness answered, "I am not now." The real facts would show that on Saturday before the district attorney had instructed his assistant to file a dismissal of the case against Mr. Hill, and later, and prior to the time the question was raised, Mr. Kendall, assistant district attorney, had filed with the clerk a nolle prosequi, but the same had not been called to the attention of the presiding judge, and he had entered no order thereon. However, he must at least have given his assent thereto then, for it appears affirmatively by the record that the juror continued to serve on the jury for the remainder of the week, and in the case then on trial the juror was not held disqualified by the court, but was excused by the consent of the parties from that case. The juror was impaneled on Monday; served on the jury Monday, Tuesday, and Wednesday; this question was raised on Thursday; he was excused by the consent of the parties from serving in that case, and then continued to serve on the jury Thursday, Friday, and Saturday, being allowed his per diem as juryman for the entire week. Thus it would seem clear that, when the court's attention was called to the nolle prosequi on file, he ratified or rather gave his consent to the action of the district attorney in dismissing the case, although he may not have formally entered an order to that effect. Again, it appears from the record, as hereinbefore stated, the juror was impaneled on Monday and had served on the jury three days when approached by relator, and the question of his being a legally qualified juror had not been raised. It was subsequent to the time of the conversation between the juror and relator that the question of his qualification as a legal juror was raised in the Dr. Hughes case, and, if at the time he was approached it should be held that the juror was not a legal juror by reason of the fact that the court had not formally entered up an order approving the action of the district attorney in dismissing the case, yet he was, in fact, serving as a juror, being duly impaneled and sworn, and continued to do so, and the fact that he could be legally disqualified if the question was raised would not prevent relator being guilty of contempt if he improperly approached him while he was in fact serving on the jury as a juryman. We do not think the question of whether or not he could have been disqualified as a juror, if the question had been raised, can avail relator. He approached him while he in fact was serving as a juror in a court of this state with improper proposals, and the fact that it was subsequently ascertained that he was not legally doing so cannot avail relator as a justification for his offense, nor in mitigation thereof. In the case of Florez v. State, 11 Tex. App. 102, Florez was being prosecuted for offering to bribe an officer, and one of his defenses was that the officer was not a legal officer, and Judge Hurt, in deciding the case, says: "To hold that deputy sheriffs, constables, and jailers who have the custody of prisoners charged in a great many cases with capital felonies can be bribed to discharge the felons, and, when those guilty of the bribing are sought to be brought to justice and punishment, that they can plead that the custodians of prisoners were not in every particular legally appointed, would be a terrible doctrine indeed. Moral obliquity obtains in the one case as well as the other. The injury to public justice being the same, the defense, if one at all, is strictly technical, without foundation as we think in principle, and evidently against justice." So in this case we think it immaterial whether or not Hill was a legal juror. He had been duly

summoned, impaneled, and sworn as a juror, and he was approached in that capacity, and, as said by Judge Hurt, it would be a terrible doctrine, indeed, that would permit a person to approach one serving his country as a juryman and endeavor to corrupt him, and, when tried for that offense, permit him to justify his conduct on the ground that such person was not a legal juror.

This court again in the case of Moseley v. State, 25 Tex. App. 519, 8 S. W. 652, held such a defense not a valid defense. In that case Moseley had arrested a prisoner and accepted a bribe to release him, and, when tried, offered evidence that the arrest was an illegal one. The court says: "It is insisted by counsel for defendant that the arrest and custody of John Gable by the defendant was without authority of law, and that, therefore, it was no offense for the defendant to accept a bribe to release him. We do not so understand the law. It was by virtue of his official authority that the defendant arrested and held John Gable. It matters not whether the arrest and custody were legal or illegal, the said Gable was a prisoner in the custody of the defendant, a peace officer, and was permitted by the defendant to escape in consideration of money paid him to effect such escape. We are of the opinion that, in a prosecution for this offense, it is not permissible for the defendant to question the legality of his custody of the prisoner. Such an issue is irrelevant and immaterial. The moral obliquity of this offense is the same where the custody of the prisoner is illegal as where it is legal, and the injury to public justice is the same." As said in that case, the law abhors official corruption, and we cannot sanction the doctrine that one can approach a person serving as a juryman improperly, and, when it is sought to punish him for such an act, he can escape the due punishment for his act by showing that such person was improperly or illegally serving in that capacity. It is not attempted to be shown that relator at the time he approached the juror knew or had any reason to believe that the juryman was not qualified to serve, but his whole acts and conduct would show that he was seeking to influence a man who had been impaneled on the jury for the week, and who, so far as respondent knew at the time, was a legal juror, and who he thought might be selected on the jury to try his friend, Dr. Hughes. It is his acts for which he is being punished, and his conduct is as reprehensible in the one instance as the other, and he will not be permitted to say that he subsequently learned the juror was not a legal juror.

Our attention has been called to the case of Moore v. State, 44 Tex. Cr. R. 159, 69 S. W. 521, in which an officer had arrested Moore without warrant, and Moore had of-

fered to pay him $50 "to be released if the officer would say nothing about the matter." In that case it is sought to distinguish it from the Florez and Moseley Cases, supra, and it is held that as "Moore had nothing to do with the illegality of the arrest, except that he was suffering an injury to his personal rights by reason thereof," he would not be guilty of any wrong. We are left in doubt as to whether the opinion is based on the fact that Moore was guilty of no crime, and therefore suffering illegal detention, or whether it was the mere fact he had been arrested without a warrant. If the latter proposition is the one asserted in the opinion, we do not think it is the law, and while as said by Judge Hurt in the Florez Case, supra, there are some cases to be found so holding, yet the great weight of authority holds otherwise. And the same learned judge who wrote the opinion in the Moore Case in a later opinion (Johnson v. State, 49 Tex. Cr. R. 250, 92 S. W. 257) held that, as the officer did not have time to obtain a warrant, the arrest was legal, and the person offering such an officer a bribe to be released under such conditions was guilty. A long list of decisions from other states approve the decision of Judge Hurt in the Florez Case, and the decision of Judge Willson in the Moseley Case, among which might be cited State v. Ellis, 33 N. J. Law, 102, 97 Am. Dec. 707; People v. McGarry, 136 Mich. 316, 99 N. W. 147; State v. Lehman, 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670; State v. Campbell, 73 Kan. 688, 85 Pac. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203; Murphy v. State, 124 Wis. 635, 102 N. W. 1087; State v. Potts, 78 Iowa, 656, 43 N. W. 534, 5 L. R. A. 814; Diggs v. State, 49 Ala. 311; State v. Wynne, 118 N. C. 1206, 24 S. E. 216; State v. Duncan, 153 Ind. 318, 54 N. E. 1066; State v. Gardner, 54 Ohio St. 24, 42 N. E. 999, 31 L. R. A. 660; State v. Goss, 69 Me. 22; Mechem, Pub. Off., sec. 336, and cases cited in these opinions. While all these cases may be said to be prosecutions for bribery, yet the principle of the law therein announced is applicable to the question here involved. In this case, as hereinbefore stated, the relator approaches a man who has been regularly summoned, impaneled, and sworn, and who is serving as a juror, and who relator, so far as this record discloses, had no reason to believe was not legally doing so, and seeks to influence his action in a particular case.

That it may have been subsequently discovered that such person was not a legal juror would not be available as a defense to his wrongful conduct, and, as the trial judge found on hearing the case that relator was guilty of unduly attempting to influence a juror as alleged in the complaint, the relator is remanded.