POINDEXTER v. STATE.

Opinion delivered July 14, 1913.

1. CONTEMPT—INFORMATION—SUFFICIENCY.—An information for contempt of court committed out of the presence of the court, is sufficient if made by the prosecuting attorney under his official oath, even though not specially verified by him. (Page 187.)

2. CONTEMPT—CITATION—SUFFICIENCY.—Where a citation for contempt is ordered to be entered upon the record, and embodies the infor-

mation against the contemnor, the accused is given sufficient notice of the offense with which he is charged. (Page 188.)

3. CONTEMPT—APPEARANCE—DEFECTIVE SERVICE—WAIVER.—When defend-· ants cited for contempt, without objection entered their appear· ance, they will not be heard later to complain of defective service. (Page 188.)

4. CONTEMPT—WHAT CONSTITUTES—SUFFICIENCY OF EVIDENCE.—Evidence that defendant, an attorney in the case, invited a juror and deputy sheriff into his room and gave them a drink of whiskey, *held* sufficient to warrant a conviction of defendants, the attorney, juror and deputy sheriff for contempt of court; but while the room was shared by another defendant, another attorney in the case, who was no party to the invitation or act, the evidence *held* insufficient to warrant his conviction for contempt of court, although he did not report the transaction to the court. (Page 190.)

5. CONTEMPT—PUNISHMENT.—Although defendants are properly convicted of contempt,˙the absence of an intentional wrongdoing will make a punishment by fine alone, sufficient. (Page 193.)

Appeal from Lawrence Circuit Court; *R. E. Jeffery,* Judge; reversed as to Poindexter, modified and affirmed as to other defendants.

STATEMENT BY THE COURT.

On March 11, 1913, one Benningfield was being tried in the circuit court of Lawrence County on an indictment charging him with murder in the first degree. The attorneys present representing the defendant were L. B. Poindexter and Oscar Blackford. L. C. Going, one of the attorneys for the defendant, was not present while the jury was being selected. He arrived at Walnut Ridge about 2 o'clock Thursday morning, March 13, 1913. He found all the rooms of the Rhea Hotel occupied, and there was no other hotel in town. He was assigned to the room in the Rhea Hotel occupied by Poindexter, associate counsel representing the defendant. He continued to occupy this room with Poindexter until the trial of Benningfield was over. When Going arrived the jury had been empanelled and put in charge of a special officer. The jurors were instructed, among other things, to remain together during the recess of the court, and to let their conduct be, as it had been in the past, free

from any sort of criticism, not to separate from each other unless accompanied by the bailiff, stay as nearly as they could separated from crowds, not to permit any one to talk to them about the case or talk in their presence or hearing about it, and not to receive any information as to the merits of the case from any source whatever. The jurors, in the instructions, were impressed with the importance of the case, and their duties, and of the necessity of not permitting any one to approach them concerning it.

Going did not know, at that time, the juror, Moseley, and the bailiff, Freer. On Thursday he cross examined the witnesses for the State, but gave no attention to the *personnel* of the jury. During the recess of the court at the noon hour that day Smith, one of the attorneys for the State, and several others drank with Going in room No. 25, occupied by him and Poindexter. After court adjourned in the afternoon of that day, Moseley, accompanied by Freer, the bailiff, started down to the office of the hotel to get a cigar and at the head of the stairs met Going, and some one remarked that he would like to have a drink of whiskey, and Going said that he had some whiskey in his room. Thereupon several persons, including Moseley and Freer, went to room No. 25 with Going and took a drink. Moseley and Freer immediately left the room after getting the drink. Going did not at that time know Moseley and Freer, and said he did not know that one was a juror and the other a bailiff, until the bailiff told Going that Moseley was a juror, whereupon Going stated that he might have said something about the case, not knowing Moseley and the bailiff, and Freer replied that he would not have permitted anything to be said about the case. The case was not discussed. Poindexter was not in the room during this occurrence.

The next day, Friday, March 14, Going was about half through with his argument for the defense when the court took a recess for the noon hour, giving cautionary instructions to the jury and the bailiff, as above stated.

Going and Poindexter went to their room. Going took a drink of whiskey, leaving the bottle on the table in the room. He laid down across the bed, resting and thinking about the remaining portion of his argument to be resumed at the afternoon session of the court. Poindexter was making his toilet and preparing for the noon meal. A knock at this juncture was heard at the closed door and one of them said, "Come in;" Moseley and Freer went in. Moseley remarked that if there was any whiskey in the room he was going to have it. He picked up the bottle of whiskey, and stated that "a man don't have to give a man whiskey; when you find it drink it." Some one spoke about that time and said, "You boys better shut that door." One of them closed the door. Moseley took a drink, turned to the hydrant for water, and went out. The case was not discussed. Neither Going nor Poindexter knew who was knocking at the door when one of them said, "Come in."

Moseley explained his conduct by saying he was feeling bad and wanted a drink of whiskey. He told the bailiff he "had to have it; he was tired and worn out, and was not used to being penned up like cattle." He went to the room of his own volition. Neither Poindexter nor Going had any knowledge that he was going there at that time. Moseley would not have gone to the room without the bailiff. He was in the custody of the bailiff both times that he got a drink. He had been admonished by the court not to leave the rest of the jury except with the bailiff, and when the bailiff went with him he didn't feel that there was any impropriety in taking a drink in the presence of the bailiff. He had not been admonished by the court not to take a drink. Even if an opportunity had been afforded him he would not have discussed the case nor permitted any one to discuss it in his presence.

Moseley and another juror voted for manslaughter; eight of the jurors stood for murder in the first degree, and two for murder in the second degree. There was a hung jury, and a mistrial of the case.

The prosecuting attorney filed his information, on

his official oath, before the judge of the Lawrence Circuit Court, accusing the petitioners, Poindexter, Going, Moseley and Freer, of contempt of court, which, among other things, alleged that "after the jury in the Benningfield case had been empanelled and had been put in charge of a bailiff to be kept together, and had been instructed to permit no one to talk to them and not to talk to any one themselves with reference to the case, and to prevent all improper influences being brought upon them, J. B. Freer, as the bailiff in charge of said jury, took one J. W. Moseley, a member of said jury, to the private room of said Poindexter and Going, attorneys of record for the defendant; where the said Moseley was given whiskey to drink in an attempt to improperly influence and corrupt the said J. W. Moseley and to have him return a verdict for defendant in the cause; that Moseley, as the juror, did unlawfully and corruptly and contemptuously go to the room of the said Poindexter and Going, the said attorneys, and there partake of whiskey in violation of the court's orders and his duty as a juror in said cause.

"That the said Freer, in violation of the court's instructions, corruptly and contemptuously took the said juror Moseley to the room of the said Going and Poindexter for the purpose of having him given whiskey and otherwise to act improperly as a juror in the said cause.

"That each of the defendants corruptly and contemptuously violated the instructions and orders of the court given to said Freer as bailiff, and to the jury of which the said Moseley was a member, which instructions were given in the presence and with the knowledge of said defendants Poindexter and Going, and Freer and Moseley.

"That the said room referred to as the room of Poindexter and Going was a room in the Rhea Hotel, in the town of Walnut Ridge, Arkansas."

Upon this information the judge made the following order:

"It is therefore ordered that the clerk of this court issue a citation against the said Freer, Moseley, Poindexter and Going, commanding them to appear and show cause on the 28th day of March, 1913, in this court, why they should not be dealt with for said contempt."

The citation, by order of the court, was entered upon the record.

The citation was served upon Moseley on the 27th of March, and upon Freer on March 28, but was not served upon Poindexter or Going until after the return day, but was served upon each of them on March 29.

On the 2d of April, at the same term of court, the information was read by the prosecuting attorney, and the petitioners demurred thereto, generally, for the reason that it did not state a cause of action for contempt, and, specifically, for the reason that it was not verified by oath, and not supported by affidavit. The demurrer was overruled.

The evidence was heard, developing the facts substantially as above set forth, and the court entered up a fine of $50 against each of the petitioners, and adjudged that they be imprisoned in the county jail for five days.

The petitioners and appellants filed a motion for a new trial, which was overruled, and they have duly prosecuted their appeal to this court. They, also, have brought up the record for review by *certiorari.*

*H. L. Ponder* and *Rose, Hemingway, Cantrell &
Loughborough,* for appellant Poindexter.

It is impossible to find anything in this appellant's conduct that is in the least censurable. There is nothing on which to base a finding that he was in contempt of court. 134 Mo. App. 55, 114 S. W. 538.

If there is a duty resting on an attorney when he learns of an impropriety on the part of a juror, or other officer of the court, to make report of the fact, it is a mere matter of ethics; not a requirement of the law. Mere failure to report one's knowledge of a crime, is not a criminal offense. 12 Cyc. 193; 1 Am. & Eng. Enc. of L. 267; 3 Cox, C. C. 597; 26 Gratt. (Va.), 956, And we

are unable to find any authority for holding that the failure to report misconduct affecting the court's jurisdiction constitutes a contempt.

*A. S. Irby,* for appellant Moseley.

The judgment should be quashed because:

1. The citation was not issued by the court, but recites that information was "filed before *me* as judge of said court," and was signed by the judge. There is no order of the *court* for such citation. 9 Ark. 259.

2. The information does not show that the offense was committed within the jurisdiction of the court, but only shows that defendants, Moseley and Freer, visited the private room of Poindexter and Going in the Rhea Hotel, without alleging where that hotel was. 57 Am. St. Rep. 568; 22 Cyc. 278, and cases cited.

3. The information was not sworn to nor based upon an affidavit, whereas it should have been verified by the oath of the prosecuting attorney, or been based upon an affidavit. 1 Ark. 279; 38 Ark. 521; Kirby's Dig., § 1613; 41 Ark. 403; *Id.* 488; 47 Ark. 243; 89 Ark. 72; 102 Ark. 122; 62 N. E. (Ind.), 625; 87 S. W. (Mo.), 503; 83 S. W. (Mo.), 1082; 28 Pac. (Col.), 961; 14 N. W. (Neb.), 143; 85 N. E. (Ind.), 356.

4. The information did not state facts sufficient to constitute a contempt on the part of appellant, Moseley. The office of the citation is not to contain the charge, but to bring the parties before the court to answer the charge contained in the information. There was no allegation in the information that he partook of whiskey in the room occupied by Poindexter and Going, and that recital in the citation was not authorized. *Supra;* Art. 7, § 26, Const. 1874; Kirby's Dig., § 720; 4 Ark. 630; 9 Ark. 259; 14 Ark. 538; *Id.* 544; 16 Ark. 384; 35 Ark. 118; *Id.* 458; 73 Ark. 358; 80 Ark. 579; 87 Ark. 47; 89 Ark. 76; 93 Ark. 307; 94 Ark. 558; 102 Ark. 122; 105 Ark. 190; 57 Am. St. Rep. 568; 81 Pac. 409.

5. The testimony does not support the judgment of the court. 9 Cyc. 57; 56 N. Y. St. 779; 38 Fed. 482; 74 Ia. 585.

*S. D. Campbell,* for appellant Going.

There is a distinction to be observed between a contempt committed in the *presence of the court,* or by disobeying or obstructing the court's process and orders, which may be punished summarily, and a contempt committed otherwise, where a citation must be issued and served, appearance had in obedience thereto, a trial and a judgment upon evidence introduced and not based upon observation of the court itself.   Art. 7, § 4, Const. 1874; *Id.* § 26; Kirby's Dig., ch. 28, § § 720, 721, 722, 723; *Id.* ch. 42, § § 1189, 1190; *Id.* § § 2612, 2613; 9 Ark. 259; 14 Ark. 538; 78 Ark. 262; 14 Ark. 544; 35 Ark. 458.

The evidence fails to show any contempt upon the part of either Going or Poindexter, in that it does not show on their part any disrespectful conduct towards the court or disobedience of any orders of the court, or instructions given to the jury.

If there was anything subject to criticism on their part, it was effectually purged of any contempt by their disclaimer of any intention to interfere in any manner with the proper administration of justice or to impede the progress of the trial.   14 Ark. 544; 16 Ark. 384; 71 Ark. 333.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.   The citation was issued by the court, and not by the judge, as appears by the face of the citation itself, the same being a certified copy of an order of court, entered at length on the record, which concluded with the direction, "Copy of this order duly certified by the clerk, shall serve as a citation here. * * *"

2.   The information was sufficient, being filed by the prosecuting attorney, *upon his official oath,* charging a contempt of court, etc.   Kirby's Dig., § 722; 89 Ark. 72, 76; *Id.* 77; 9 Ark. 259; 78 Mich. 358, 367; 177 Mo. 229; 74 N. E. (Mass.) 677, 679; 69 L. R. A. (Ore.), 466, 472.

Appellants have not raised this question in the proper manner.   They demurred to the information, and

thereby entered their appearance. 35 Ark. 276. They should have moved to quash or to strike, appearing only for the purposes of the motion and not entering an appearance generally. 14 Ark. 625; 24 Ark. 151; 30 Ark. 547; 81 S. W. (Mo.) 430; 87 S. W. (Mo.) 527.

3. This was a constructive criminal contempt and the court had power to proceed on its own motion. 65 Ind. 504; 117 Fed. 448; 114 Ill. App. 323; 102 Ark. 122, 128.

4. The information was sufficient to show that the offense was committed within the jurisdiction of the court, specifically stating that it was committed in the Rhea Hotel, Walnut Ridge, Arkansas. The court will take judicial knowledge that Walnut Ridge is in Lawrence County. 90 Ark. 596.

5. The information states facts sufficient to constitute a contempt on the part of Moseley. 129 N. W. (Minn.) 583, 584; 35 Ark. 118, 121.

6. The evidence is sufficient to show a contempt on the part of Poindexter and Going; and the disclaimer is not sufficient to purge the contempt. 44 L. R. A. (Mass.) 159, 162; 1 Ark. 265, 266.

Wood, J., (after stating the facts). As we said in Ex parte *Winn,* 105 Ark. 190, "No question is raised here as to the form in which a review by this court is sought. Therefore, we pretermit any discussion of that question, as the case may be treated as being here either on appeal or on writ of *certiorari.*"

The information under the official oath of the prosecuting attorney and the citation directed by the judge to be issued by the clerk, setting forth the information showing the grounds upon which the petitioners were cited to appear and show cause why they should not be dealt with for contempt, were sufficient to give the court jurisdiction. The information made by the prosecuting attorney under his official oath was sufficient, even though not specially verified by him, to meet the requirements of the law, as an accusation setting forth the offense with which the petitioners were charged. The citation

alone, embodying the information which the court ordered to be entered upon its record, was sufficient to meet the requirements of the law, as announced by the court in *CarlLee* v. *State,* 102 Ark. 122, to give the accused petitioners information of the offense with which they were charged.

The citation was duly served upon the petitioners Moseley and Freer before the return day thereof, and although the appellants Poindexter and Going were not served before the return day, they were served before the cause was heard. All the petitioners appeared and made no objection to the service. They therefore can not now complain that they were not duly served with process.

It is unnecessary to determine as to whether the information and citation stated facts sufficient to constitute a contempt of court, for the whole case was developed on evidence taken before the court, and the question now is as to whether or not the evidence was sufficient to warrant the court in finding the petitioners guilty of contempt.

Treating the testimony bearing upon the case of each petitioner separately, we are of the opinion that there was no evidence to warrant the court in adjudging Poindexter guilty of contempt. There was no testimony to warrant the inference that he was instrumental in inviting the bailiff and the juror to the room he occupied for the purpose of furnishing liquor to influence the juror in rendering his verdict. His generosity and courtesy in sharing his room, in an emergency, with associate counsel made him the innocent victim of the unfortunate circumstances, which afterwards developed and over which he had no control, that doubtless caused the trial judge to conclude that he was concerned, or at least acquiesced, in the improper conduct of the other petitioners.

Poindexter didn't know that Going had a bottle of liquor when he consented to share the room with him. He didn't know that Going had invited any one to go

to his room for the purpose of drinking liquor, much less the bailiff and the juror. When the bailiff and the juror knocked at the door of Poindexter's room and were invited to come in he didn't know before their entrance who it was that knocked nor what their purpose was. The liquor didn't belong to him. It was brought to the room without his knowledge. He didn't ask them to take a drink, but simply continued making his toilet, as he was doing at the time they entered the room. Instead of inviting the bailiff and the juror to take a drink of liquor, he states that he protested, saying, "You ought not to come here; you are going to get us all into trouble."

Poindexter had never taken a drink of liquor in his life and didn't approve of the use of it by others. He had nothing to do whatever with the episode and should not be censured and held for contempt merely because he failed to exclude the bailiff and the juror from his room; nor should he be held for contempt because he failed to report the matter to the circuit judge.

The court, from the questions propounded to Poindexter, seems to have considered that it was the duty of Poindexter to have called the matter to his attention as soon as it occurred, but we do not agree with the court, and are of the opinion that Poindexter gives a perfectly reasonable and plausible explanation of why he did not do so, which should have been accepted by the court.

Poindexter testified that had he known, when the door was closed and the knocking was heard at the door, that it was the bailiff and one of the jurors, he would not have said "come in," and "he would not have stayed in the room if he had had time to consider the matter, but it was one of those things that comes so suddenly that a person does not have time to make up his mind as to what is best to do." Freer was not a friend of Poindexter, and, while the latter fully appreciated the fact that it was improper for Freer and the juror to be in his room under the circumstances, yet he did not feel called upon to give publicity to the matter because he was in no way responsible for the unfortunate and embarrassing

situation, and doubtless felt that if he had reported the matter to the court it might have prejudiced the juror against him, and in some way have jeopardized the interest of his client.

In our opinion the testimony thoroughly exonorates Poindexter from any contemptuous conduct, and the court erred in not so holding.

The cases of Going, Freer and Moseley are different from Poindexter's. The testimony of the bailiff, Freer, and the juror, Moseley, shows that on the evening after the arrival of Going, they met him at the head of the stairs in the hotel, and he invited them to his room to take a drink of whiskey. Going testified that he wouldn't invite a juror to his room and would not give him a drink with a view of influencing him, and that he "did not know by what means Freer or Moseley knew that there was whiskey in his room, unless one of them spoke to him and he, not knowing that the bailiff or juror was connected with the court, replied that he had some whiskey." Going does not deny that he extended to Freer and Moseley an invitation to take a drink of whiskey in his room. He only says that he did not know that the one was the bailiff, and the other a juror. He says, at that time, they were strangers to him. So the testimony shows that he met these men, whom he did not know personally, and of whose official character he was not then advised, and invited them to his room to take a drink of whiskey, without first taking the precaution to inquire whether either one had any connection with the trial then in progress. Yet he knew the crowded condition of the hotel, and must have known that the jury in charge of the bailiff was being entertained there. On the second occasion, when the juror and the bailiff went to his room on their own motion to get a drink of whiskey, he did know of their relation to the trial, yet he did not admonish them that it would be improper, on account of the connection they all had with the trial, and because of the court's instructions, for them, with or without his invitation, to drink of his liquor in his room. In expla-

nation of his conduct on this occasion, he says: "I would not knowingly permit a juror to come to my room, but when you have got a man's life on your hands, and a juror comes to your room, the question of what you would do, or wouldn't do, is a proposition that no man can say until they go through that very experience."

Now, when Senator Going left the Senate to go to the dry town of Walnut Ridge to serve as lawyer in the defense of a client who was on trial for murder, he equipped himself with what he termed a "vial" of liquor, and being a vial it was presumably for his own use. But on the evening after his arrival we find him prepared from that "little bottle of medicine" "to give strong drink unto him that is ready to perish and wine to those that be of heavy hearts." Both the bailiff and the juror Moseley seem to have been in that condition. For the bailiff, after he and the juror were invited, though protesting that the juror "shouldn't go," that it was "shaky" for him to do so, nevertheless permitted him to go, and went with him, and took a drink himself from Going's vial. The juror who "never refused a drink" when asked to take one, and who took it when he found it whether asked or not, said that he "felt bad, he was tired and worn out, was not used to being penned up like cattle" and "had to have a drink," and was going after it whether the bailiff went with him or not. It should be here remarked that Going's vial contained enough liquor, as shown by his own testimony, to furnish a drink "to several persons" on two occasions, besides the bailiff and juror.

So here we have the spectacle of one of the leading lawyers for the defense, in his private room, giving liquor to one of the jurors and also to the bailiff having the jury in charge. The bailiff was shown to be in sympathy with the prosecution, and it was believed that the juror Moseley at that time was also unfavorable to the defendant. But there was no verdict, and after the mistrial it was found that juror Moseley was one of two who voted for a verdict of manslaughter, while eight were for mur-

der in the first degree, and two for murder in the second degree. The defendant, on a second trial, was convicted of murder in the second degree and sentenced to twenty years in the penitentiary.

It occurs to us that the maxim *ignorantia legis neminem excusat* applies with peculiar force to one who at the time of his alleged offense was not only a lawyer, but also one of our lawmakers. He should be held to know the law and also the proprieties of professional conduct, and the rules of court that must obtain in the orderly administration of the law. So far as the bailiff and the juror are concerned, they were under the positive orders of the court "to stay as nearly as you can separated from the crowds around the hotel" and "to let your conduct be free from any sort of criticism." Their conduct therefore can only be explained upon the theory that their appetite got control over their judgment, under the insidious influence of the bewitching announcement by Going that the whiskey they were invited to drink was "sixteen or twenty years old," and when they took one drink they found it "mighty fine stuff," and "had to have" another.

Courts were created for the purpose of protecting life and property, and preserving all the sacred rights vouchsafed by the Constitution and statutes. The happiness and well-being of society and the perpetuity of our institutions depend upon the integrity, independence, conservatism and courage of the courts in upholding the majesty of the law. To carry out the wise purposes of their creation they must always maintain their own dignity and enforce obedience to their authority. The jury, through all the ages since Magna Charta has been retained as an essential part of the judicial system. It is impossible to keep the fountains of justice clean and pure unless the jury is free from contaminating influences. Strong drink therefore should be neither for judges nor jurors, "lest they drink and forget the law, and pervert righteous judgment."

What shall the penalty be? The parties have dis-

claimed any intentional wrong-doing, and we have reached the conclusion that such was the case. Nevertheless, the conduct under review was well calculated in the eyes of the public to bring the law, and the tribunal charged with its enforcement in that jurisdiction into contempt. Hence the trial court was correct in calling petitioners Going, Freer and Moseley to account, and in rebuking and punishing them for contempt. But as they sought in every way to purge themselves of intentional disrespect for the court and testified that nothing was said concerning the merits of the case, we are of the opinion that justice will be done, and the dignity and authority of the court vindicated, when the fine imposed is paid, without the jail sentence, of which petitioners should be relieved. It is so ordered, and the judgment otherwise affirmed.