## Ex Parte H. E. Kahn.

### No. 4802.  Decided June 24, 1921.

**1.—Contempt—Pleading in Contempt Cases—Affidavit.**

In contempt cases of this kind, under the authorities in this case, it is not necessary that the presentation for contempt be supported by affidavit, but that same may be made by the prosecuting attorney in his official capacity.  Following Ex Parte Foster, 44 Texas Crim. Rep., 425, and other cases.

**2.—Accomplice Testimony—Charge of Court—Corroboration.**

Where the contempt proceeding against relator is a misdemeanor, and it is evident from the testimony in the case that the chief witness against the defendant was an accomplice and required corroboration, and the evidence was insufficient to show such corroboration, the conviction for contempt cannot be sustained.

From Harris County.

Original *Habeas Corpus* proceedings asking release from arrest under a judgment of contempt.  In the Criminal District Court of Harris County.

The opinion states the case.

*Presley K. Ewing,* for relator.

*E. B. Hendricks,* Assistant Attorney General, and *John H. Crooker,* Criminal District Attorney, Harris County, for the State.—Cited cases in opinion.

LATTIMORE, JUDGE.—The relator is restrained by virtue of a judgment from the Criminal District Court of Harris County whereby he is adjudged guilty of contempt, and his punishment fixed at a fine of $100 and confinement in the county jail for three days.

An examination of the judgment, and the pleadings upon which same is based, shows that the foundation for said proceeding was a charge filed by the Criminal District Attorney of Harris County, alleg-

ing that relator and certain others had conspired, combined and agreed to improperly influence certain jurors drawn on a special venire in a case wherein relator was one of the attorneys, said judgment proceeding upon the conclusion that the effort was shown to have been made to bribe said jurors, and that this relator was a party to said transaction either by active participation therein at the time, or by reason of advising or agreeing thereto prior to the attempted consummation. The party who was charged with the direct effort to influence said jurors improperly was one. Hennessey.

Relator attacks the sufficiency of the instrument signed and filed officially by the Criminal District Attorney of Harris County charging said contempt, as being insufficient for that purpose. Without discussing the authorities cited by relator and appearing in support of his position, it suffices to state that as we understand the authorities in this State it is not necessary that the presentation for contempt be supported by affidavit, but that same may be made by the prosecuting attorney in his official capacity. Ex parte Foster, 44 Texas Crim. Rep., 425; Ex parte Smith, 40 Texas Crim. Rep., 179; Ex parte Landry, 65 Texas Crim. Rep., 440, 144 S. W. Rep., 962; Ex parte Shepherd, 68 Texas Crim. Rep., 443, 153 S. W. Rep., 628; Ex parte Yoshida, 70 Texas Crim. Rep., 212, 156 S. W. Rep., 1166; Ex parte Poindexter, 159 S. W. Rep., 197.

For purposes of this opinion it is not necessary to discuss the principal facts. Relator's client was charged with murder. There seems no dispute of the fact that W. F. Hennessey attempted to bribe two of the jurors who were summoned on the special venire in that case. The case was set down for the 26th of March, 1917, and that was the date on which said jurors were summoned to appear. The case seems to have been continued by agreement of parties on Friday, the 23rd of March. It is insisted by relator that the testimony of Hennessey, the admitted principal in the effort to bribe said jurors, is that of an accomplice in this case, and that unless he was corroborated by other evidence tending to connect relator with the offense, the charge against him would not be sustained, and the judgment of contempt was erroneous.

The offense charged against relator is punishable only by fine and a jail sentence. Same would, therefore, be a misdemeanor. It is evident that if any attempt was made to bribe jurors, Hennessey was a party to said transaction, and his evidence when used against relator as a witness would be that of an accomplice and would require corroboration. Branch's Ann. P. C., Sec. 702. It appears to us from an inspection of the record in this case that the trial court proceeded upon this theory, and that he must have concluded that there was such corroboration of Hennessey, who was used as a State witness, as justified finding relator guilty as charged.

For the purpose of determining whether or not there be sufficient evidence in the case independent and separate from that of said Hen-

nessey, to corroborate him, we state the substance of the testimony of each other witness save that of the trial judge, the district clerk and the two jurors, none of these testifying to anything shedding light upon relator's connection with the transaction. We also omit any discussion of the testimony of Hennessey, the alleged principal.

Larry Moore testified that he was a venireman summoned on Becker's case, and that relator telephoned him to come to his office, and that he went on Saturday, March 24th, and that when he got to said office relator asked him if he was summoned on the venire in the Becker case, and witness told him yes, and relator said the case is put off, and witness said he would not have to serve anyhow because he was exempt, and that relator thanked witness for coming over, and witness got his hat and left. This is all that appears in the testimony of Mr. Moore in anywise affecting relator. Mr. Gorman testified that he signed a bond for Hennessey who was at that time charged with bribery at the request of a Mr. Bouknight, but he did not mention relator's name in his testimony any where.

Mrs. Mollie Hennessey, wife of the alleged principal in said bribery transaction, testified that after having a conversation with her husband and a man named Bouknight she went to the office of relator herein and had the following conversation with him: He asked her what her business was, and she told him she came to see what this was they got Hennessey into, and he said, "Well, it will not amount to anything" or something like that and for her not to worry, and that he would see Hennessey through it. She spoke of wanting money to send her husband, and relator said to her, "Go to Bouknight and we will do business through Bouknight's office." Relator said to her that he did not want her in his office or to be seen around there, and thereafter she did not go to said office and never saw relator again. She testified and her son testified that on several occasions after this they went to Bouknight's office and obtained from him various sums of money. She and her son also testified to a number of conversations with Bouknight in which he made statements which, if admissible, would tend to implicate this relator. We do not think said statements of Bouknight admissible as against this relator.

Lawrence Hennessey, a brother of said alleged principal in said bribery matter, said that after his brother came back or when they were looking for him back, he went to a man named Gordon to try to get him to sign a bond, and that Gordon put in a long distance call for relator at Marlin, Texas, and talked over the phone to some one whom he supposed to be relator, and then signed the bond. Gordon testified that he talked to relator over the long distance phone and that relator told him that he did not think that said Hennessey would run away; that relator did not guarantee or request witness to sign said bond, but that after he talked to relator he signed it. Witness King said he represented Hennessey in two cases of Bribery, and that relator paid him the fees for so doing; that he told witness that he had been requested

to represent Hennessey, but did not feel inclined to do so because the charge against him grew out of an alleged attempt to bribe jurors in a case against one of relator's clients. Witness did not know where the money came from which was paid to him by relator. Hennessey had told witness that he had no money unless he soaked his diamonds for it.

The above represents a fair statement of all the evidence upon which reliance must be had to corroborate Hennessey in his claim that he was advised and employed by Bouknight and relator to attempt to bribe said jurors. There is nothing in that of Moore and Gorman which has apparently any weight at all. There is nothing in the testimony of the other four witnesses which is not entirely explainable upon perfectly innocent grounds, and we are of the opinion that said evidence is insufficient, taken in and of itself, to tend to connect relator with any effort to bribe any jurors, and this we understand to be the test of the sufficiency of corroborative evidence. Unless such evidence, when considered separate from that of the accomplice, tends to connect the accused with the crime charged, the corroboration should be held insufficient.

So believing, the writ prayed for by relator is granted, and it is ordered that he be discharged from custody under said judgment of contempt.

*Discharged from custody.*