## BROWN v. STATE.

4309                                    173 S. W. 2d 1016

Opinion delivered July 12, 1943.

136

*Byron Goodson* and *Gordon B. Carlton,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

KNOX, J. The prosecuting attorney for the Ninth Judicial Circuit, of which Sevier county is a part, filed in the circuit court of said county a verified petition alleging facts which tended to show that a certain dance hall owned by appellant, and known as "Brown's Tavern," was being conducted in such a way as to constitute a public nuisance within the meaning of Chapter 134, (being §§ 10909 to 10927, inclusive, of Pope's Digest). The court issued a temporary injunction reciting "that the sheriff of Sevier county be and he is hereby directed to temporarily padlock 'Brown's Tavern,' and the aforementioned operator (appellant) and any and all other persons are hereby temporarily restrained from operating said place of business." The cause was set for final hearing for February 10th, but the appellant confessed the truth of the allegations and voluntarily consented through his counsel that the injunction might be made permanent, and thereupon on February 9th the court entered an order which reads in part as follows:

"It is therefore considered, ordered and adjudged that the aforementioned place known as 'Brown's Tavern,' be and the same is hereby declared a public nuisance; that same should be abated and that respondent, J. H. Brown, and all other persons are hereby restrained from the operation of said premises as a cafe, dance hall, night club, tavern or any other business purpose, unless authorized by this court, for a period of twelve months from this date; that the temporary order made and entered herein on the 27th day of January, 1943, padlocking said premises be and the same is hereby continued in full force and effect for a period of twelve months from this date; that respondent, J. H. Brown, pay all costs of these proceedings and this court hereby retains jurisdiction of this cause for all purposes."

On the night of March 26th, the circuit judge, having previously been informed that appellant was probably violating the injunction, directed the sheriff's office to make an investigation, and told the officers that if they found that dancing was being permitted in the place to arrest appellant.

Shortly after midnight three officers made the investigation as directed. "Brown's Tavern" consists of three rooms—a large dance hall, a kitchen and a bedroom. The windows in the dance hall are situated high in the wall, and the officers found it necessary to climb up a ladder to look through the same. They saw three women and three men (one being appellant) dancing to the accompaniment of music being furnished by a phonograph of the kind commonly designated in the vernacular of the patrons of such establishments as a "juke box." Empty and partially empty beer, wine and whiskey bottles evidenced the fact that Bachus was a present, even if unseen guest. From time to time various members of the group were seen to take a drink out of bottles of the kind in which intoxicants are usually contained. All of the persons appeared to have been drinking, but none was drunk. The dancing couples were quite demonstrative in the exchange of oscular evidences of affection. The padlock which had been placed on the front door in compliance with the order of injunction was no longer there, although the door was in fact locked by means of the regular lock installed thereon. The officers themselves being unobserved continued to observe the festivities for some thirty minutes, and then suddenly and without warning smote upon the door. A sudden hush fell over the whole scene, the lights went out, and a voice, which some of the officers thought belonged to appellant, said "somebody pull the plug" (the electric connection for the phonograph) "that might be the law." Being informed that those seeking admittance were in fact officers, appellant requested that they come to the back door, which they did, and being admitted placed appellant under arrest, advising him that he was being arrested at the direction of the judge for contempt of court on account of alleged violation of the injunction

order. The officers had no warrant. They took appellant into DeQueen, where he made bond and was released from custody.

On March 29th, the prosecuting attorney filed an information charging appellant with violating the order of injunction and praying that he be punished for contempt of court. Based on this information a citation was issued and served on the appellant, requiring him to appear for trial on March 31st. On the day so fixed for trial, appellant appeared in person and by counsel and filed a document styled "Motion to Dismiss Contempt Proceedings." The gravamen of the motion is that appellant had been arrested and held on the charge without process having first been obtained, issued and served as required by law, and that on that account the court had acquired no jurisdiction. The motion was overruled, but the court on its own motion continued the case until April 3, 1943. Thereafter and on the same day, to-wit: March 31, 1943, a new citation was served on appellant, advising him of the filing of the information, and notifying him that evidence would be presented to the court on April 3rd, "showing a violation of the permanent injunction" and that appellant was thereby "in contempt of court," and notifying appellant to be present at such time and place to show cause, if any he could, why he should not be punished. Attached to this citation were certified copies of (a) the information, (b) the temporary restraining order, and (c) the permanent injunction. On the day fixed for the trial appellant renewed his motion to dismiss for want of jurisdiction, which was overruled. The matter was then tried on the merits, and the court found appellant guilty of contempt.

The matter is brought here on a petition for a writ of certiorari, but in order that we may fully dispose of all questions presented we treat the case as being here on appeal.

Appellant urges two grounds for reversal: (1) that the trial court was without jurisdiction, (a) because the proceedings were in fact commenced at the time, and

by means of, the arrest of appellant, at which time no information or charge of any kind had been filed, or process of any character issued, and (b) that the information which was later filed did not state facts sufficient to charge appellant with an act in violation of the injunction; and (2) that the evidence presented failed to show that appellant had violated the terms of the injunction.

In the case of *Nichols* v. *State,* 171 Ark. 987, 287 S. W. 190, the late Mr. Justice HART said: "It will be noted that, under the provisions of the statute above cited, proceedings for contempt, in cases of this sort, are criminal in their nature, and the prosecuting attorney is one of the officers who may conduct proceedings for the state under the act. The contempt complained of was not committed in the presence of the court, and, under the ancient rule of reason and natural justice, the offending party should be proceeded against upon the affidavit of some one with knowledge of the facts, or upon information of the prosecuting attorney who instituted the proceedings for the State in the first place. Where information is filed by the prosecuting attorney, his official oath is sufficient, and no further verification is necessary. *Poindexter* v. *State,* 109 Ark. 179, 159 S. W. 197."

If, in this case after appellant's arrest, (which was effected without the filing of an affidavit or information, or the issuance of a warrant, citation or other writ), he had been put on trial with no further formality, such proceedings doubtless would have constituted error. In this case, however, the prosecuting attorney, after the arrest, and before the trial filed formal information against appellant, and citation was issued thereon and served on appellant.

Assuming, without deciding, that the officers were not authorized to make the arrest at the time they did, such improper or unlawful arrest did not have the effect of absolving appellant from liability for his previous acts, done in violation of the injunction, and which constituted contempt of court.

Appellant's contention that the information filed by the prosecuting attorney did not state facts sufficient to constitute a charge against him, or apprise him of the nature of the charge against him, is not well founded. In the case of *Nichols* v. *State, supra,* no information was filed. There the prosecuting attorney filed and caused to be served on the defendant an instrument styled "Notice of Citation for Contempt." In the body of such document it was stated that the prosecuting attorney would at a certain time and place present to the court "evidence . . . showing a violation of the permanent injunction . . . that you have violated the liquor law of this state, and, therefore, are in contempt of court." Notwithstanding the fact that the notice wholly failed to state in what manner the injunction had been violated, or when, where, how and under what circumstances the defendant had violated the liquor law, the court nevertheless held that the notice was sufficient. In the case at bar the citation advised appellant that he was charged with violating the injunction. This was also charged in the information. Certified copies of the injunction and information were attached to the citation. The notice of the charge here was as full and complete as that which was held sufficient in the Nichols case, *supra.*

The Nichols case was decided prior to the adoption of § 3851 of Pope's Digest which allows an accused who feels that the charge is not alleged in sufficient detail to file a motion for a bill of particulars. In this case no such motion was filed. On the contrary appellant went to trial, offered testimony, and at the close of the testimony made no request for time to obtain additional witnesses. Evidently his side of the case was fully developed. Even if the facts constituting the contempt had not been alleged in sufficient detail this is no longer material, since the record shows that the accused had opportunity to, and did in fact fully develop his case. *Poindexter* v. *State,* 109 Ark. 179, 159 S. W. 197, 46 L. R. A., N. S., 517.

Appellant's contention that the evidence was insufficient to support the judgment of contempt would present no serious question if we had only to look to the

formal orders of the injunction, and the evidence as to appellant's conduct. Under such circumstances there could be no question of appellant's guilt. As pointed out in the statement of facts, the temporary order directed the sheriff "to temporarily padlock" this place of business. The permanent order provides "that the temporary order . . . padlocking said premises be continued in full force . . . for a period of twelve months. . . ."

This language can mean only that the entire premises are to be padlocked and closed, and remain padlocked and closed for a period of twelve months. It is true that the permanent order also enjoined appellant from using the premises for business purposes; but this language did not relieve him of the injunction which was also placed on him by the implication contained in the quoted language respecting the padlocking of such premises. By that language appellant was restrained from opening or entering the building at all. And, as before stated, there could be no question as to appellant's guilt if we consider only the formal orders themselves.

The record discloses, however, that at the time the permanent order was issued there was some kind of arrangement worked out between the attorney for appellant and the trial court by which appellant for a while would be allowed to occupy a part at least of the premises. The trial court's statement concerning the matter is that appellant was to be permitted to sleep in the bedroom, but was not to use any other part of the building. The attorney for appellant testified that it was his understanding that appellant was to be permitted to use all or any part of the building as his private residence, but could not operate the same as a business establishment. It is appellant's defense here that he was using the building as his private place of abode, and was on the night of his arrest giving a private party to a few of his friends.

It is unfortunate that the understanding with respect to the use of these premises was not set out in the order. If the order as drawn and entered had been limited or

restrictive in its scope, appellant doubtless could not be punished for contempt, because he had failed to comply with some oral direction given him by the trial judge which went outside of and beyond the limits defined in the formal order itself. Here we have no such condition. As above pointed out, the formal order restrained the appellant from entering or using the building or any part thereof. It is not denied that he violated the letter of this order. He offers by way of excuse that he thought he had permission to use all of the building, including the dance hall, for his private purposes and the entertainment of his friends. The trial judge has found that the permission which was given to appellant to use part of the building for a limited time and for a specific purpose did not include the use of the dance hall at any time for any purpose whatever. The findings of the trial judge are in accordance with the preponderance of the evidence. The judgment is affirmed.