WELLS *v.* STATE.

(*Nashville*, December Term, 1938.)

Opinion filed June 10, 1939.

WM. R. HARRISON and CHARLES N. SHOEMAKER, both of Memphis, for plaintiff in error.

ERNEST F. SMITH, Assistant Attorney-General, for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant was convicted of violation of section 11083 of the Code, given a sentence of two years in the penitentiary, and has appealed in error. Section 11083 of the Code is as follows:

"Any person who corruptly offers, promises, or gives, to any police officer or official, sheriff, deputy sheriff, constable, town marshal, game warden, deputy game warden, state highway patrolman or any other state, county, or municipal peace officer, after his election or appointment, either before or subsequent to his having been qualified, any gift, gratuity, or thing of value with intent to influence his act or acts as such officer or official or to cause him to refrain or desist from performing his

duty as such shall be guilty of bribery and shall on conviction be imprisoned in the penitentiary for not less than two years or more than ten years.''

There is little dispute with reference to the facts of this case. One Gustavus and another police officer of the City of Memphis arrested Earl Van Buren for speeding and found a quantity of whisky in his car. Van Buren was subsequently indicted for violation of the liquor laws. His car was taken by the arresting officers to police headquarters and turned in there.

After this arrest the defendant Wells, who is the father-in-law of Edgar Van Buren, brother of Earl Van Buren, approached these two police officers, telling them that the car they had taken in belonged to his son-in-law. He then proposed to officer Gustavus, if the latter would release the automobile and not turn it over to the Government, that he (defendant) would pay Gustavus $100. According to the testimony of Gustavus, he did not accept this offer, but in a day or two thereafter, Gustavus testified that defendant met him and told him the $100 was ready, and handed the $100 to the officer. Gustavus said that he then told the defendant to get in his (the officer's) car, which defendant did, and they drove to the police station. When they got there, defendant was arrested, and the money turned over to the police department. This testimony of Gustavus is corroborated by another policeman with him.

The only difference in the testimony of the officers and that of defendant is that the latter testified that Gustavus made the proposition that the car would be released if the defendant would get up $100. Defendant said that he got the $100 accordingly, paid it over to the officer, and got into the officer's car, not knowing that he was

to be arrested, thinking that he was to get Edgar Van Buren's car back.

■ The defendant said that he did not know what the $100 was for, whether for fine or costs, and that he did not intend to offer a bribe to the policeman. However, the defendant admits that he is a sort of bail bond broker, is around the courthouse most of the time, and the jury were justified in rejecting his claim of innocent motives.

The argument made in defendant's behalf is based on the proposition that it was beyond the power of the officer Gustavus to return this automobile after it was taken in to headquarters by him; that the officer had no such power or authority; that such an act was beyond the scope of his official duties; and therefore the payment of the money by defendant was not a payment with intent to influence the acts of Gustavus as an officer or to induce him to refrain from performing any official duty. This theory was advanced in a motion for a directed verdict, and in a special request, and finds support in decisions of some of the courts. Cases are collected in Notes, 14 Ann. Cas., 246, and 15 L. R. A. (N. S.), 1173, taking this and a contrary view.

■ ■ We prefer the contrary view. The gravity of official misconduct is emphasized, in our opinion, if the act corruptly undertaken is beyond the authority of the officer. If an act is done under color of office, it is done officially. Such an act is surely official misconduct, and one who by bribe influences an officer to such misconduct falls under the denunciation of section 11083 of the Code.

In *State of Iowa* v. *Potts*, 78 Iowa, 656, 43 N. W., 534, 5 L. R. A., 814, an officer was bribed to release certain intoxicating liquors unlawfully held which the officer had

seized under a search warrant. In a prosecution for bribery the court said:

"It is true, the defendant had no power to issue an order for the discharge of the property; but it was in his possession and under his control as an officer, and we think that any agreement by which he undertook to thwart the ends of justice by using his official position in procuring the release of the intoxicating liquors would subject him to the penalties of the crime of receiving a bribe."

In *People* v. *Jackson,* 191 N. Y., 293, 84 N. E., 65, 67, 15 L. R. A. (N. S.), 1173, 14 Ann. Cas., 243, a coroner, with certain judicial powers, undertook to hold an inquest in a case of death by violence and to discharge a defendant although the death did not take place in the State of New York, but in New Jersey, beyond the jurisdiction of the officer. The court said:

"The law does not protect a corrupt judge because he exceeds his powers, and his action is colorable merely. It does not mind whether, when accepting a bribe to do an act apparently within his jurisdiction, he actually had jurisdiction. The statute against bribery says nothing about jurisdiction, and official action means such as properly belongs to the office and is intended by the officer to be official. It is sufficient if the defendant assumed, *colore officii,* to perform a function belonging to his office, even if the right to perform it did not exist in the particular case. [Citing authorities.]

"Just as an officer *de facto* is punishable for malfeasance in office the same as if he had been an officer *de jure,* so an officer *de jure* acting apparently with, but really without, jurisdiction, is punishable for accepting a bribe the same as if he had had complete jurisdiction,

provided the action to be corruptly taken was in form appropriate to the office held by him."

Although the disposition of property seized by police officers under a search warrant and otherwise is directed and controlled by statute and such officers have no legal power to surrender or release the same, yet they do retain possession of such property for a time, and we think that a corrupt effort to induce such officers to give up the property seized is within the terms of our statute.

For the reasons stated and upon the authorities cited, the judgment of the court below is affirmed.