RALPH W. RICHARDS v. STATE.

197 So. 772
Division A
Opinion Filed August 2, 1940
Rehearing Denied October 1, 1940

*William Judge, Roger J. Waybright* and *Edgar W. Waybright, Sr.,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Defendant in Error.

PER CURIAM.—Plaintiff in Error, a city commissioner of the City of Daytona Beach, was tried, and convicted on the charge that he did "unlawfully and corruptly exact and accept a reward, compensation, and remuneration other than that which he, the said Ralph W. Richards, as such

municipal officer was permitted and provided by law to accept and receive." He was sentenced to pay a fine of one thousand dollars and in default thereof to be confined in the State penitentiary for one year at hard labor. He seeks relief from that judgment by writ of error.

It is first contended that Volusia County is made up of what is known locally as the "ring faction" and the "anti-ring faction," that each of said factions are about equally divided, that in making up the jury list, from which the jury in this case was drawn, the county commissioners intentionally and arbitrarily discriminated against the anti-ring faction and composed the jury list entirely from the ring faction, that plaintiff in error was a member of the anti-ring faction, and that his conviction was invalid because of such discrimination in the selection of the jury list.

The evidence supports the charge that Volusia County is known as having two political factions by the names stated, though it is admitted that every other legal requirement in the selection of the jury list was complied with. The objection to the instant jury was raised seasonably by a challenge to the array and while it is shown that many of the names were drawn from the ring faction, it is not shown that the jury selected to try the plaintiff in error belonged to either faction or was in any wise prejudiced to or for any reason disqualified to try him. It is further shown that neither faction had been continually in power, that the balance of power constantly vacillated from one faction to the other and that there was no recognized line of distinction that separated one faction from the other.

To support his contention, plaintiff in error relies on Norris v. State of Alabama, 294 U. S. 587, 55 Sup. Ct. 579, 79 L. Ed. 1074; American Sugar Refinery Company v. Louisiana, 179 U. S. 89, 21 Supreme Ct. Rep. 43, 45 L.

Ed. 102; Juarez v. State (Tex. Civ. App.), 277 S. W. 1091, and other cases of similar import. These cases all grew out of a continued and persistent refusal over a period of years to place names on the jury list because of racial or religious distinctions. Such discriminations were held to be in violation of the Fourteenth Amendment to the Federal Constitution or to provisions of the State Constitutions affecting religious affiliation.

From these and similar cases, we glean the general rule to be that any intentional and persistent discrimination against a race or class of persons in the selection of a jury list to try a criminal case is violation of the constitutional rights of the accused, and that such violation is not excused by the fact that the persons actually selected possess all the qualifications for jury duty prescribed by law. The discrimination on the basis of race, religion, or class must, however, be constant. It can have no relation to classes or factions more or less fanciful, mysterious, or nebulous, bound by no restrictions or common loyalties and who continually shift from one faction to the other unless conclusively shown that the verdict was influenced by that fact.

Plaintiff in error next contends that Section 7486, Compiled General Laws of 1927, the Act under which he was convicted, embraces the offenses of bribery and extortion, that all the evidence elicited against him, if it proved anything, proved bribery, that there was no evidence tending to prove extortion, and being so, he is immunized from prosecution under Section 8311, Compiled General Laws of 1927, because he was called before the grand jury and required to testify concerning the charge against him.

The offense of bribery as punished in this State applies to the one who corruptly offers, gives, or receives anything of value to influence the receiver's official action while ex-

tortion consists in demanding an illegal fee or gift to influence official conduct. Section 7486, while infected with the element of bribery, is much broader in scope than the bribery statutes. It reaches only the acceptor of the bribe, but it also includes the crime of extortion and affects the officer, his deputy, or appointee if he exacts or accepts a bribe for the performance, non-performance, or violation of any act, rule, or regulation that he may be called on to perform. It was framed in other words to reach and punish any misconduct on the part of a public officer or his deputy. This Court has recognized the distinction between the two statutes; Johnson v. State *ex rel.* Fox, 99 Fla. 711, 127 So. 317.

The pertinent evidence against plaintiff in error shows in substance that the City Commissioners of Daytona Beach had accumulated what they called a campaign fund by contributions from the officers and employees of the City, that said fund was in charge of Commissioner Couch and was soon to be discontinued, that plaintiff in error was a member of the city commission and as such, had contributed more than $10,000 to this fund, that the mayor-commissioner of the City had recently died and that another was to be elected in his place by the other commissioners, that Commissioner Couch authorized one W. P. Preer to negotiate with plaintiff in error for his vote in support of him (Couch) for mayor-commissioner. It is also shown that plaintiff in error was at first offered five thousand dollars for his vote for Couch as mayor-commissioner, that he haggled and jockeyed over the offer, but later agreed to and did vote for Couch for mayor-commissioner on condition that he be paid ten thousand dollars from the campaign fund since it was to be discontinued. There is evidence to show that the amount

agreed on was paid to the plaintiff in error after he cast his vote for Couch.

It is not disputed that at the time of these negotiations Commissioner Couch was in charge of, and responsible for, the distribution of the campaign fund, that plaintiff in error accepted the reward on the theory that he had contributed liberally to the fund and that it was soon to be discontinued. For this reason, he sidesteps the odium of the transaction and contends that he should be relieved of the penalty.

In our view, Section 7486, under which plaintiff in error was convicted applies to a transaction like this. The source from which the reward of bribe came is not material; the official conduct that it actuated is the gist of the offense. A study of the title and text of the Act can lead one to no other conclusion than that its purpose was to impose a uniform standard of moral conduct on all public officials. Certainly nothing could be more desirable in public officers. Inequality of moral standards is one of the greatest obstacles to law enforcement in this country. It makes personal compacts difficult and international compacts almost impossible of enforcement. If permitted to traffic in the trust imposed in him in the manner shown here, then all restraint is off and public office is no more a position of trust and confidence, but a sanctuary for the freebooter.

But plaintiff in error says that he is immunized from prosecution under Section 8311, Compiled General Laws of 1927, because he was called before the grand jury and required to testify concerning the charge against him.

Defendant filed a plea in abatement which was overruled. Thereupon the defendant on January 18, 1939, exhibited his petition for rule *nisi* in prohibition. On consideration thereof this Court denied the rule.

On February 2, 1939, Petitioner filed his motion for

rehearing wherein it was insisted that the Court had over-looked pertinent statutes, and insisting that the petition for rule *nisi, supra,* and the plea in abatement, which was made a part of the petition, was sufficient to show that the petitioner was immune from prosecution under applicable statutes, and particularly under the provisions of Section 8311 C. G. L. But the Court overruled the petition for rehearing and thereby necessarily held that the plea in abatement and the allegations of the petition were insufficient and thereby established *as the law of this case* that the plea in abatement was insufficient.

The plea does not allege that the defendant while a witness before the grand jury was interrogated in regard to the $10,000.00 which he was alleged to have received from Couch in payment for his having voted for Couch to be Mayor of the City of Daytona Beach. Nor does it allege that he testified before the grand jury concerning this item of $10,000.00.

In Section 11 of the plea it is said:

"That this defendant was questioned and interrogated by said State Attorney aforesaid, in the presence of said grand jury as aforesaid, for and concerning the subject matter contained in the body of the Information in this cause; that this defendant gave and disclosed to said grand jury and said State Attorney as aforesaid all knowledge and information that he, this defendant, had of and concerning the subject matter of the investigation aforesaid, and that by so doing he is immune from prosecution of said offense, as provided in and by Section 8311, of the Compiled General Laws of Florida, 1927."

It will be observed that the allegations were not sufficient to show that the defendant had any knowledge of the alleged $10,000 transaction, nor were they sufficient to show

that he gave any testimony before the grand jury as to what the facts were in connection with this transaction. The allegation, "that this defendant gave and disclosed to the said grand jury and said State Attorney as aforesaid all knowledge and information that this defendant had of and concerning the subject matter of the investigation aforesaid" is not sufficient to show that the defendant gave any testimony which threw any light on the facts involved in the $10,000 transaction or that tended to show that the defendant had participated in such alleged transaction.

We do not glean from the record that the defendant offered or proffered any testimony on the trial to show what his testimony was before the grand jury. This burden rested upon the defendant.

It is true that during the progress of the trial defendant's counsel requested the court to require the court reporter, who is shown to have taken down in shorthand the testimony of certain witnesses before grand jury and is shown to have transcribed reporter's notes of that testimony, to submit a transcribed copy of that testimony to defendant's counsel for examination. This request was made while the State was putting on its evidence against the defendant. The court granted the request insofar as the testimony of the witness who had testified on the trial and before the grand jury was concerned, but denied the request as to testimony of other witnesses before the grand jury including the testimony of the defendant. The only proper purpose that such transcript could have served would have been to place defendant's counsel in better position to cross-examine those witnesses for the State who had testified before the grand jury and also on the trial of the defendant, and without further showing than was made, there was no error in the court denying that part of the request which it did deny.

186

When the State closed its case the defendant announced that he would put on no testimony and proceeded to the jury without offering any testimony. When the State closed its case the way was open for the defendant to introduce witnesses or to proffer testimony showing any matter of defense, including the opportunity to show that he was immune from prosecution because of testimony which he had been required to give and had given before the grand jury. This the defendant voluntarily declined to do. There is nothing in the record to indicate that he would not have been allowed to do this or that he would not have been allowed by the court to introduce any available testimony showing that he was immune from prosecution or showing that a judgment could not be lawfully entered against him in this case. Having failed in this, we cannot assume that he was immune from prosecution; nor can we assume that the Circuit Court would have ruled adversely to the defendant if he had proffered the evidence which he alleges was then within his knowledge and which he contends would have been sufficient to bar his conviction.

For this reason, the judgment would be affirmed.

So ordered.

TERRELL, C. J., and BUFORD and THOMAS, J. J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.