HOBSON, Justice.
Appellant, a former City Clerk of the City of Lake Worth, Florida, was tried in the Criminal Court of Record for Palm Beach County on a charge of violating Florida Statutes, § 838.06, F.S.A. He was adjudged guilty, and from this final judgment prosecutes his appeal.
*186 The following facts are not in dispute: In 1944, the City of Lake Worth authorized certain refunding bonds, which were duly issued. In 1951 and 1952 the governing body of the city authorized the city to purchase some of these refunding bonds. Under this authorization, sinking fund monies were delivered by appellant to the Truman A. Lifsey Company, a Palm Beach bond brokerage house operated by Mr. Truman A. Lifsey, for the purchase of bonds. Some of the bonds so purchased were delivered by the Truman A. Lifsey Company and some were not. On April 16, 1953, Truman Lifsey died. The money he had received from the city for undelivered bonds was not discovered, nor were the bonds he was supposed to have purchased for the city. An “assignment” to appellant of the contents of a safety deposit box (which was supposed to contain cash sufficient to cover the value of the undelivered bonds), had been made by Lifsey in 1952. After Lif-sey’s death the box was opened, but was found to contain nothing of value. The city’s losses from this whole transaction were of great magnitude. Lifsey’s death brought to light the shocking situation out of which these proceedings grow.
The information filed against appellant charged him with accepting unlawful compensation of $1,500 for the nonperformance of an act which it was incumbent upon him, as City Clerk, to perform, namely, for failure to require the Truman A. Lifsey Company to immediately deliver bonds of the City of Lake Worth when said bonds were paid for, permitting the company to receive money from the city without delivery of bonds to the city.
Florida Statutes, Section 838.06, .F.S.A., ■ reads in part as follows:
“838.06 Unlawful for officers to accept unauthorized compensation for performance or nonperformance of duty. — It is'unlawful for any officer, state, county or municipal, or any public appointee,' or any deputy of any such officer or appointee, to exact or accept any reward’, compensation, or other remuneration other than those provided by law, from any person whatsoever for the performance, nonperformance or violation of any act, rule or regulation that may be incumbent upon the said officer or appointee to administer, respect, perform, execute or to have executed; * *
We have italicized the words of the statute which are particularly applicable to this-case. As may be seen, although this action reaches only the acceptor of a bribe, it covers offenses broader than common law-bribery, since it punishes an officer for accepting compensation for nonperformance-of duty. Richards v. State, 144 Fla. 177, 197 So. 772, certiorari dismissed 312 U.S. 662, 61 S.Ct. 737, 85 L.Ed. 1109; State ex rel. Grady v. Coleman, Fla., 183 So. 25. This court has shown no disposition to restrict the scope of the statutory offense of bribery. In Richards v. State, supra, in discussing Section 7486, C.G.L., 1927, which-used the same language as the section now-before us. we said, 197 So. at page 774:
“A study of the title and text of the Act can lead one to no other conclusion than that its purpose was to impose a uniform standard of moral conduct on all public officials. Certainly nothing could be more desirable in public officers. Inequality of moral standards is one of the greatest obstacles-to law enforcement in this country. It makes personal compacts difficult and international compacts almost impossible of enforcement. If permitted' to traffic in the trust imposed in him in the manner shown here, then all restraint is off and public office is no-more a position of trust and confidence, but a sanctuary for the freebooter.”
The key contention of the appellant is that it was not “incumbent upon” him to require Lifsey to deliver the bonds upon receipt of the city’s money, because (1) the city had no authority in the first instance to “invest” in its own refunding bonds, and since the project was unlawful in its inception it could not have been appellant’s duty to take part in it, and (2) it was not in any event the duty of the City *187 'Clerk to require delivery of the bonds when paid for: ' ’ ‘
With regard to the city’s lack of authority, appellant cites a number of cases ■concerning the crime of obtaining money •under false pretenses, but they have no bearing upon the case at bar.. While there are no Florida cases in point, the matter has been decided in other jurisdictions.
In Fall v. United States, 60 App.D.C. 124, 49 F.2d 506, certiorari denied 283 U.S. 867, 51 S.Ct. 657, 75 L.Ed. 1471, Albert Fall, former Secretary of the Interior, had been •indicted for violation of a federal bribery •statute, 18 U.S.C. § 207.- While the fed- • eral statute differs in language from our -own, the principle of the Fall case 'is applicable-here. Acting pursuant to'an Ex•-ecutive Order of the President, 'Fall made •■certain contracts and a-lease, for which he received unauthorized' compensations. The Executive Order -was subsequently declared •invalid. Fall was indicted ■ for accepting -a bribe, and argued that- since the order under which he acted was a-nullity, it could not form a basis for action within the bribery statutes. It was held that this was no defense, since “[t]he gravamen of the ■offense charged is not the execution of the ■contracts and lease, but the acceptance of a bribe to influence his official conduct.” 49 F.2d at page 509. To the same effect, see People v. Lafaro, 250 N.Y. 336, 165 N.E. 518, cited as authority in Fall v. United States, supra; York v. State, 42 Ga.App. 453, 156 S.E. 733; Taylor v. State, 174 Ga. 52, 162 S.E. 504; State v. Lehman, 182 Mo. 424, 81 S.W. 1118, 66 L.R.A. 490; and State v. Ellis, 33 N.J.L. 102, 97 Am. Dec. 707.
The contention of appellant that it was not his duty as City Clerk' to require delivery of the bonds when paid for is likewise without merit. If the 'duty of requiring delivery of the thing for which the city’s money was being.spent did not specifically devolve upon the appellant as City Clerk it was a duty which he assumed when he elected, in his official capacity, to deliver the money to the Truman .Lifsey Company.- In so doing, he was certainly not acting as a private person, but on the contrary was. acting at least .under color of his authority as one in a position of public trust. ....
In Wells v. State, 174 Tenn. 552, 129 S.W.2d 203, 204, 122 A.L.R. 948, a bribery case, wherein the defendant’s argument .was similar to that of appellant herein, the Supreme Court of .Tennessee, in affirming defendant’s conviction, stated:
. “The gravity of official, misconduct is emphasized, in our opinion, -if the act, corruptly undertaken is beyond the authority of-the officer. If an act is done under color of office, it is done officially.”
There is no suggestion that Lifsey had been appointed to hold bonds for the city as trustee. Appellant testified that “delayed delivery” of the' bonds by Lifsey had been ■verbally authorized by the Mayor, but he must have known that so significant a step could not validly have been taken so informally. The record shows that nineteen times, extending over a period from No•vember 27, 1951,- to March 10, 1953, appellant failed to receive from Truman Lif-sey Company all of the bonds for which he "delivered the checks. Sometimes he would obtain partial delivery and sometimes none at all, with the result that there was a shortage of some 284 bonds when Lifsey died. The statute, however, condemns such conduct only when it occurs in consideration of unauthorized compensation .received by the offending officer, and we turn next to' consider the evidence upon this indispensable element.
Mary Ellen Grossman, bookkeeper -.for the Truman Lifsey Company, testified that she gave- appellant $1,500 in cash on November 10, 1952. Appellant denied receipt of this money. This presented an issue which the jury resolved against appellant, as it was entitled to do. It is true that the witness Grossman was promised immunity from prosecution by the State, *188 but this did not make her testimony incredible as a matter of law.
Evans Crary testified appellant had told him that Truman Lifsey expected to make an income tax saving “if the funds could be left there for some period of time * * * and that he would give Mr. Ewing half of the income tax savings” but “Mr. Ewing stated that all he got was $1500.00”. On cross-examination, Crary expressed some doubt as to the source of this statement, and testified that it might possibly have been made by appellant’s son, but said it was his recollection that appellant had made the statement. W. T. Anderson testified unequivocally that appellant had said “Mr. Lifsey had a big income tax problem, and he (appellant) was to get half of the income tax saved for letting him delay delivery of the bonds to the City of Lake Worth * * * ”,
This evidence was sufficient to support the jury’s apparent conclusion that compensation had been received by appellant for failure to require delivery of the bonds, pursuant to a plan to which appellant was a party.
Other points are raised, but we find them to be without merit.
We have given this case most extensive consideration. The testimony of numerous character witnesses called by appellant shows that his reputation in the community has heretofore been excellent. The appellant worked for the city from August, 1927 to 1953, and was eligible for retirement. There are factors in the case which suggest that appellant was a victim of circumstances over which he exercised little control, and evidently the jury took these factors into consideration when it recommended leniency. But in view of the breadth of our statute and the evidence which we have discussed above, we are constrained to affirm the judgment of the trial court.
Affirmed.
DREW, C. J., and TERRELL and ROBERTS, JJ., concur.