WHITE, Judge.
The State of Florida appeals five orders entered in five separate but similar cases which have been consolidated for purposes of appeal. Each of the appealed orders quashed an amended information charging that the particular defendant named therein :
“ * * * [being] an officer or public appointee of the State of Florida, or deputy of such officer or public appointee, to-wit: an Engineer of the *29 State Road Department of the State of Florida, on the 7th day of November, 1959, in the County of Hillsborough and State of Florida, did unlawfully exact or accept a reward, compensation or other remuneration other than those provided by law, to-wit: the sum of Twenty-five ($25.00) Dollars in currency of the United States of America of the value of Twenty-five ($25.00) Dollars in money current in the United States of America, and a like sum on divers dates within the two (2) years preceding the filing of this information, in the County and State aforesaid, without reasonable grounds for believing that the reward, compensation or remuneration exacted or accepted was authorized by law, from Cone Brothers Contracting Co., a Florida Corporation, for the performance, non-performance or violation of any act, rule or regulation that might be or was incumbent upon said officer, public appointee or deputy of such officer or public appointee, to administer, respect, perform, execute or to have executed, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.” (Emphasis supplied.)
The five defendants severally moved to quash the amended informations on 19 identical grounds, but the trial court granted the motions solely on ground No. 10 to the effect that the information failed to state the particular “act, rule, or regulation” incumbent upon the defendant and which the State expected to prove he violated. The court expressly denied the defendants’ motions as to all the remaining 18 grounds.
The State contends that the amended in-formations are sufficient because they are couched substantially in the language of the statutes defining the crime in question, viz., §§ 838.06[1] and 838.07 [2]. The defendants urge that even if the single ground on which the trial court quashed the in-formations should not be well-founded, the orders nevertheless should be sustained on the 18 other grounds specified in the motions to quash. The defendants did not file cross-assignments of error with respect to these additional grounds rejected by the trial court, and the State moved this court to strike those portions of defendants’ briefs directed to the grounds in question. Ruling on this motion was reserved pending hearing on the merits of the appeals.
The defendants on their part moved to dismiss the appeals on the ground that the State, as appellant, did not undertake to deal with the 18 grounds of the motions to quash which the trial court had rejected and which purported to raise certain constitutional questions. We denied these motions, and the defendants then vainly sought from the Supreme Court of Florida a writ of prohibition against this court. We here announce that the question of the extent to which the additional grounds of the motions to quash may be considered and reviewed on these appeals becomes moot in *30 view of our conclusion that the trial court did not err in quashing the informations on specified ground No. 10, viz., that each amended information failed to state the particular “act, rule or regulation” incumbent upon the defendant and which the State expected to prove that he violated.
The State, as previously indicated, takes the position that the amended infor-mations stating the charges substantially in the language of the statute are sufficient. The State cites and quotes State v. Pound, Fla.1950, 49 So.2d 521, 523:
“We have held that if an information substantially follows the language of the statute charging the offense, then it is legally sufficient.’’
In the Pound case just quoted the defendant was charged with issuing a worthless check. The information clearly specified the time and place of issuance and also incorporated a copy of the alleged worthless check. There was no question of any undefined rules or regulations described in generic terms.
The State also cites State v. Barone, Fla.1960, 124 So.2d 490 holding that Fla. Stat. §§ 828.19 and 828.21, F.S.A., not here involved, are not unconstitutionally vague and indefinite and that a conforming information against the defendants was not vague or indefinite. It is notable, however, that the defendants in that case were charged specifically with contributing to the delinquency of a minor. § 828.21, F.S.A. provides that the meaning of “delinquent child” shall be that defined under the laws of Florida[3]. The defendants were fully apprised of the particular charge against them.
The instant case is materially distinguishable also from State v. Bruno, Fla.1958, 107 So.2d 9, strongly argued by the State. There the defendant was charged with larceny in connection with the discharge of the duties of his office. The information specifically set out the elements of larceny, a traditional common law crime. The information was held sufficient to apprise the defendant of the particular offense with which he was charged; and it was sufficient on its face to safeguard the defendant from double jeopardy. The only vague aspect concerned the “manner in which the alleged offense was connected with the discharge of the duties of his office.” The court held that this could be supplied by a bill of particulars. It was not a necessary element of the basic crime of larceny otherwise specifically charged.
On the other hand, in the instant cases it was incumbent upon the State to charge the defendants with respect to some particular duty or duties. Section 838.06, F.S.A., supra, makes it unlawful for public officials and appointees or their deputies to exact or accept any reward or compensation other than those provided by law “for the performance, nonperformance or violation of any act, rule or regulation” that may be incumbent upon such persons to administer. The emphasized clause is embodied in the statute and constitutes a necessary element of the crime. This element, being defined in generic terms, requires specification in the indictment or information of just what act, rule or regulation the defendant is charged with having violated. In Rosin v Anderson, 1945, 155 Fla. 673, 21 So.2d 143, the Florida Supreme Court held that when the statutory definition of an offense includes a generic term, it is not sufficient that the indictment charge the offense in the same generic term. It must descend to the particulars. The opinion in the Bruno case, discussed supra, significantly recognizes this rule at page 14 of 107 So.2d of the reported decision. In this connection it is notable that a bill of particulars cannot validate an invalid information. Cf. Craig. v. State, 1928, 95 Fla. 374, 116 So. 272; 17 Fla.Jur., Indictments and Informations, § 63. Accord United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076, 1077.
*31 Referring further to the State’s position we have analyzed several other cases arising under the involved statutes and cited on behalf of the State. In every instance the information specifically set out the violation of a particular duty incumbent upon the defendant. See and compare Younghans v. State, Fla.App.1957, 97 So.2d 31, 32; Ewing v. State, Fla.1955, 81 So.2d 185; State ex rel. Grady v. Coleman, 1938, 133 Fla. 400, 183 So. 25; State ex rel. Williams v. Coleman, 1938, 131 Fla. 872, 877, 180 So. 360; Johnson v. State ex rel. Fox, 1930, 99 Fla. 711, 127 So. 317. See also 5 Fla.Jur., Bribery, §§ 17, 20.
In Russell v. United States, 1962, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, the Supreme Court of the United States reversed convictions affirmed by the Court of Appeals for the District of Columbia whereby each defendant was convicted of refusing to answer certain questions when summoned before a Congressional Subcommittee. In each case the indictment failed to identify the subject under congressional inquiry at the time the witness was interrogated. The indictment stated only that “the questions to which answers were refused ‘were pertinent to the question then under inquiry’ by the subcommittee.” The trial court denied motions to dismiss and the defendants appealed. The majority opinion of the Court, by Mr. Justice Stewart, reasons as follows:
“ * * * This Court has never decided whether the indictment must identify the subject which was under inquiry at the time of the defendant’s alleged default or refusal to answer. For the reasons that follow, we hold that the indictment must contain such an averment, and we accordingly reverse the judgments before us. * * *
}Jc ‡ ‡ s{<
“As has been pointed out, the very core of criminality under 2 U.S.C. § 192, 2 U.S.C.A. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was’, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.
“ ‘It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, “includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, —it must descend to particulars.” ’ United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 [593], An indictment not framed to apprise the defendant ‘with reasonable certainty, of the nature of the accusation against him * * * is defective, although it may follow the language of the statute.’ United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819 [820], ‘In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to' be punished; * * United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135. ‘Undoubtedly, the language of the statute may be used in the general description of cm offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.’ United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 [518]. * * *
“ * * * A cryptic form of indictment in cases of this kind requires the defendant to go on trial with the chief issue undefined. It enables his conviction to rest on one point and the *32 affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture. * *”
5*5 * * * * *
“It is argued that any deficiency in the indictments in these cases could have been cured by bills of particulars. But it is a settled rule that a bill of particulars cannot save an invalid indictment. See United States v. Norris, 281 U.S. 619, 622, SO S.Ct. 424, 425, 74 L.Ed. 1076 [1077] * * *.” (Emphasis supplied.)
“Payola” probably is not regarded as an authentic word, but this lately coined expression is peculiarly descriptive. It denotes to the public the unsavory practice of making gifts to receptive representatives of powerful governmental agencies as a means of currying favor and enhancing prospects of economic or other advantages. Although generally such practices have not been forbidden under penalty of law, they are widely condemned as unethical and offensive to good government.
The statutes here informed under are essentially “bribery” statutes. As with criminal statutes generally they are to be strictly construed. Florida, in company with most other states, has no anti-payola statute. Consequently there is little legal deterrent to some of the conflict of interest situations that frequently arise. The legislature conceivably might enact a valid statute defining conflict of interest and declaring it to be unlawful and contrary to public policy for certain officers and employees on state projects to accept any gratuity or benefit which would create a conflict of interest with the state.
In view of the conclusion reached, we deem it unnecessary to discuss other points raised and argued on appeal.
Affirmed.
ALLEN, Acting C. J., and KANNER, J., concur.

. “838.06 Unlawful for officers to accept unauthorized compensation for performance or nonperformance of duty. It is unlawful for any officer, state, county or municipal, or any public appointee, or any deputy of any suclx officer or appointee, to exact or accept any reward, compensation, or other remuneration other than those provided by law, from any person whatsoever for the performance, nonperformance or violation of any act, rule or regulation that may be incumbent upon the said officer or appointee to administer, respect, perform, execute or to have executed; provided, that nothing herein shall be construed so as to preclude a sheriff or his deputies, city marshall or policeman from accepting rewards or remuneration for services performed in apprehending any criminal.” [as it existed prior to the 1901 amendment]

. “838.07 Penalty for violation of § 8S8.06. Whoever violates the provisions of § 838.06 without reasonable ground for believing that the reward, compensation or remuneration exacted or accepted was authorized by law, shall be punished by imprisonment in the state prison not exceeding ten years or by fine not exceeding one thousand dollars.”

. Fla.Stat. § 39.01 F.S.A.