PER CURIAM.
This is an appeal by the State of Florida, the prosecution below, seeking review of an order and amended order granting appellee Greene’s motion to dismiss the information. We reverse.
To begin with, the undisputed facts are that Metropolitan Dade County Commissioner, Harold A. Greene, the defendant *103 below, was charged by information, based upon an earlier grand jury indictment, with receiving a bribe, in violation of § 838.06, Fla.Stat., F.S.A. He moved to dismiss on various grounds. The trial court treated such motion as a motion under Rule 1.190, Cr.P.R., 33 F.S.A. The judge examined the evidence under Rule 1.190, and thereafter granted the motion and dismissed the information.[1]
We set out the information, omitting the formal parts, in a note.[2] The sections of the Metropolitan Dade County Code referred to in the information are set out in the next note.[3]
The parties also do not dispute the facts underlying the charge. Kirsner employed Greene as an attorney to determine if he, Kirsner, should exercise an option to purchase certain realty at the boundary of the City of Miami and Dade County. The prosecution views the transaction as a bribe to Greene to determine whether a County access road would be provided to *104 that realty. Greene takes the position that the money was paid as an attorney’s fee.
After an extensive review of deposition testimony and the applicable law, the trial court issued the detailed order which is appealed. It, in part, is quoted below:
“The most that this Court can determine from the facts and from the indictment is that the thousand dollars paid by Hy-man Kirsner to HAROLD GREENE (considering everything in a light most favorable to the State) was in the nature of ‘payola.’
“1 “Payola” probably is not regarded as an authentic word, but this lately coined expression is peculiarly descriptive. It denotes to the public the unsavory practice of making gifts to receptive representatives of powerful governmental agencies as a means of currying favor and enhancing prospects of economic or other advantages. Although generally such practices have not been forbidden under penalty of law, they are widely condemned as unethical and offensive to good government.
“ ‘The statutes here informed under are essentially “bribery statutes.” As with criminal statutes generally they are to be strictly construed, Florida, in company with most other states, has no anti-payola statute. Consequently there is little legal deterrent to some of the conflict of interest situations that frequently arise. The legislature conceivably might enact a valid statute defining conflict of interest and declaring it to be unlawful and contrary to public policy for certain officers and employees on state projects to accept any gratuity or benefit which would create a conflict of interest and declaring it to be unlawful and contrary to public policy for certain officers and employees on state projects to accept any gratuity or benefit which would create a conflict of interest with the state.’ ” [Florida v. Hazellief, Fla.App.1962, 148 So.2d 28, 32.] * * *
“For the reasons herein above stated the Court finds:
“(a) That the factual situation fails to state a crime under the provisions of 838.06, F.S.
“(b) That the indictment and information are insufficient as a matter of law.”
We turn now from the history of this case to the point directed to the sufficiency of the information. The appellee is charged with a violation of Sect. 838.06 Fla.Stat., F.S.A. The language of the statute is extremely important in a determination of the question of the legal sufficiency of the charge brought against the appellee. We therefore set the section out in full:
§ 838.06 — Unlawful for officers to accept unauthorized compensation for performance or nonperformance of duty.
“It is unlawful for any public officer, agent, servant or employee to request, solicit, exact or accept any reward, compensation, or other remuneration, other than those provided by law, from any person whatsoever for the past, present or future performance, non-performance or violation of any act, rule or regulation that may be or may have been incumbent upon such public officer, agent, servant or employee to administer, respect, perform, execute or have executed; provided that nothing herein shall be construed so as to preclude a sheriff, deputy sheriff, constable, deputy constable, city marshal or policeman from accepting rewards or remuneration for services performed in apprehending any criminal.”
This statute is not the typical bribery statute based upon the common law crime of bribery the gist of which was influencing a public official in the discharge of his *105 official duties. At early common law, criminal bribery was limited to corruption in the administration of justice. 12 Am. Jur.2nd Bribery, § 2, p. 749. Such prohibitions are imposed by §§ 838.01, 838.011, 838.012, 838.03, 838.05, 838.09, Fla.Stat., F. S.A., however, sections 838.02, 838.06 and 838.04 are directed at both receipt of unauthorized compensation as well as the influencing of official activity.
The violation charged, in the state’s view, is that certain information was within the power, duty and discretion of the defendant to determine as an official, so that he received unauthorized compensation by being paid once by the public and once by Kirsner. The state concedes that there is no statute or ordinance making the information confidential. The state also concedes that it does not allege, or intend to prove, that the payment was directed toward influencing the Commissioner’s official activities (e. g., having the access road favorably passed on by the Public Works Department or by the Metro Commission or the defendant as an individual Commissioner). On the contrary, the state contends, “It was within his power and duty to obtain the information.” The state continues by saying that since it was within the defendant’s duty to make the inquiry that it was unlawful for the commissioner to charge for such service or to make a promise to perform such service.
The information in substance charges that the defendant for $1,000.00 promised to advise Kirsner as to whether the county was to provide an access road for certain property. Read liberally, it charges that the $1,000.00 was unauthorized compensation since the defendant in his capacity as a County Commissioner was under an existing duty [by virtue of Subsections (1) and (20) of Section 1.01(A) of the Charter[4]] to do that for which Kirsner was paying him.
Stated differently, the defendant Greene was charged with soliciting or accepting $1,000.00 from Kirsner to investigate or inquire of the Public Works Department of the County as to whether it was to provide an access road in a certain location, and to pass the information to Kirsner if such investigation revealed the road was to be installed. This is apparent because the powers and duties assigned to county commissioners under the charter include investigation and inquiry into the conduct, records and transactions of any department or office of the county, and in connection therewith to require reports from county officers and employees, and the production of records. Under the circumstances, a possible construction of the transactions could be that what Kirsner was paying the $1,-000.00 for was to have Greene find out (by an authorized official inquiry of the department) if the road was going in.
The rationale in State v. Hazellief, Fla.App.1962, 148 So.2d 28, is that since the element (of the crime set forth in 838.06 Florida Statutes, F.S.A.) “for the performance, non-performance, or violation of any act, rule or regulation” is defined generically, the charging instrument must specify just what act, rule or regulation the defendant is alleged to have violated. The contents of Subsections (1) and (20) of Section 1.01(A) are undisputed material facts.
These subsections in clear language grant a power to act, but appellee contends that they do not impose a duty to act. It is argued that if Kirsner paid the commissioner to do an act that he was empowered as a commissioner to do but not required as a commissioner to do, the statute is not applicable. We think the distinction does not apply. Whether required by duty or empowered by ordinance, the act is the official act of a commissioner.
Appellee further urges that even if for the sake of argument Subsections (1) and (20) are read to prescribe duties, then in order to establish prima facie guilt of the crime of accepting unauthorized compensa *106 tion, the duty imposed by the ordinance on the defendant would have to be a public duty concomitant with that which he undertook to do privately for money. Thus, to make the compensation unauthorized the requisite charter duty must be, for example, a duty to advise constituents concerning roads. Appellee concludes that since the cited sections (before the trial court as undisputed facts) do not impose upon the defendant the duty to do that for which he accepted “outside” money, dismissal under 1.190(c) (4) was required.
In Younghans v. State, Fla.App.1957, 97 So.2d 31, this court was called upon to review the conviction of a municipal police officer who was convicted under Sect. 838.06. It was urged on that appeal that the officer could not be convicted because the arrest which he made and which resulted in the payment of unauthorized compensation for the release of the arrested person was an unauthorized arrest. We held:
“It is immaterial whether the prisoner was lawfully or unlawfully made a prisoner. See Moseley v. State, 25 Tex.App. 515, 8 S.W. 652, People v. Anderson, 75 Cal.App. 365, 242 P. 906, 909 and cases cited therein. But after he became the defendant-officer’s prisoner there were open to the defendant only two courses of conduct as an officer. He could detain him, or let him go. He released the prisoner and accepted a reward for his action. The act of releasing the prisoner was official conduct, and the jury found that the existence of a valid ordinance under which the prisoner was taken into custody was not an essential element of the crime.
“In this connection the Supreme Court of Florida has pointed out that under this section the duty of the officer may be one that he himself has assumed without being required by law to do so. Ewing v. State, Fla.1955, 81 So.2d 185. The opinion then quotes with approval the language used by the Supreme Court of Tennessee in the case of Wells v. State, 174 Tenn. 522, 129 S.W.2d 203, 204, 122 A.L.R. 948.
‘The gravity of official misconduct is emphasized, in our opinion, if the act corruptly undertaken is beyond the authority of the officer. If an act is done under color of office, it is done officially.’ ”
The power bestowed upon Commissioner Greene by subsections (20) and (1) to inquire as to whether an access road was to be provided for the parcel of land in question, or to vote for the provision of such access road, existed for the benefit of Hy-man Kirsner and the remaining citizens of Dade County. The acts which the defendant promised Hyman Kirsner the defendant would perform are alleged to be acts within the scope of his official duty. It does not appear as a matter of law that they were not official acts. The allegation in the information that the defendant accepted compensation other than that provided by law for the performance of an act that “may be or may have been incumbent” upon him t<? perform is therefore entirely consistent with the allegation that the defendant had the “power and duty” to do so.
The judgment of the trial court is entitled to a presumption of correctness but having examined the legal basis set forth in the trial judge’s order in the light of appellant’s second point on appeal and having considered appellee’s response thereto, we reach the conclusion that the judgment dismissing the information is not supported by the applicable law.
The question of whether the appellee accepted unauthorized compensation to perform a part of his official duties is of course a question of fact to be tried by the finder of fact in the Criminal Court of Record. We simply hold on this appeal that it appears, that under the admitted facts before the trial judge the appellee could have been guilty of the receipt of unauthorized compensation for an official act.
*107 Having reached our decision upon a consideration of appellant’s point directed to sufficiency of the information and the facts before the trial court to support the dismissal of the information, we need not discuss appellant’s point presenting a procedural question.
Reversed and remanded for further proceedings in accordance with this opinion.
Reversed and remanded.

. The record is composed of the indictment, information, defendant’s motion to dismiss, a “traverse” by the state, the order granting the motion to dismiss, and order clarifying portions of the earlier order, and the appeal papers. The amending order, inter alia, struck the “traverse” as insufficient as a matter of law, apparently construing it as a demurrer. The point challenging such procedure was abandoned at oral argument. The defendant’s motion was belatedly sworn to in open court; appellee has contended that this worked no prejudice on the state, and the state has not challenged that part of the procedure so much as the availability of the Rule 1.190 procedure per se.
We therefore are confined to a limited record consisting of the charging papers and testimony of Kirsner (who allegedly bribed Greene). The testimony is from his deposition filed by defendant, his grand jury testimony, and his testimony before an assistant state attorney, which testimony is in the form of excerpts in the extensive order filed by the trial court.

. “ * * * BETWEEN THE 6TH DAY OF MARCH, 1969, AND THE 18TH DAY OF MARCH, 1969, HAROLD A. GREENE, A PUBLIC OFFICER, AGENT, SERVANT OR EMPLOYEE, TO WIT: A DULY ELECTED COMMISSIONER OF METROPOLITAN DADE COUNTY, FLORIDA, did request, solicit, exact, or accept any reward, compensation, or other remuneration, other than those provided by law. to wit: Cash in the amount of ONE THOUSAND DOLLARS ($1,000.00), good and lawful currency of the United States of America, from Hyman Kirsner, for the present or future performance of any act, rule, or regulation that may be or may have been incumbent upon HAROLD A. GREENE to administer, respect, perform, execute or have executed, to wit: Subsections (1) and (20) of Section 1.01 (A) of the Charter of Metropolitan Dade County, in that HAROLD A. GREENE did request, solicit, exact or accept ONE THOUSAND DOLLARS ($1,000.00) from Hyman Kirsner in consideration of HAROLD A. GREENE’s promise to advise Hyman Kirsner as to whether the Public Works Department of Metropolitan Dade County, Florida, was to provide an access road for a parcel of land of which Hyman Kirsner was a prospective buyer, notwithstanding that Subsections (20) and (1) of Section 1.01(A) of the Charter of Metropolitan Dade County, Florida, bestowed upon HAROLD A. GREENE, as a Metropolitan Dade County Commissioner, the power and duty to make such an inquiry to the Public Works Department or to vote for the provision of such access road, in violation of Section 838.06, Florida Statutes.”

.“A. The Board of County Commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be restricted to the power to:
“(1) Provide and regulate arterial, toll, and other roads, bridges, tunnels, and related facilities; eliminate grade crossings; provide and regulate parking facilities ; and develop and enforce master plans for the control of traffic and parking.
•⅜ * * * *
“(20) Make investigations of county affairs, inquire into the conduct, accounts, records, and transactions of any department or office of the county, and for these purposes require reports from all county officers and employees, subpoena witnesses, administer oaths, and require the production of records.” Art. 1, §§ A(l), (20), Charter of Metropolitan Dade County, Florida.

. Set out in full at footnote [3].